632 So.2d 669 (1994)
SUN BANK/SOUTH FLORIDA, N.A.; Lane, Gelety, Woolsey & Centrone, P.A.; C.L.G., Inc.; and North Ct Scan Center, Appellants,
v.
James BAKER, Appellee.
No. 92-0867.
District Court of Appeal of Florida, Fourth District.
February 23, 1994.
*670 Jon Chassen and Kelly S. Slay of Kelley Drye & Warren, Miami, for appellant  Sun Bank/South Florida, N.A.
Laurence F. Leavy of Laurence F. Leavy, P.A., North Miami Beach, and Elizabeth Russo of Russo, Talisman & Moylan, P.A., Coconut Grove, for appellee.
GROSS, J., Associate Judge.
This appeal is from a final order dismissing a complaint. The issue is whether, under the workers' compensation law, a health care provider may recover a fee in excess of the statutory maximum reimbursement allowance from an employee who settles with a third party tort-feasor. We hold that it may not and affirm.
On April 25, 1985, appellee James Baker injured his back in an automobile accident which occurred in the course and scope of his employment. He claimed workers' compensation benefits from his employer. He also sued a third party for negligence in causing the accident.
Baker sought treatment for his injuries from the Center for Neurological Services, Inc. (CNS).[1] Before beginning treatment, Baker signed an agreement which made no reference to workers' compensation coverage. One paragraph contained an assignment of insurance benefits, along with the patient's promise to pay any part of the bill not paid by an insurer. A second provision provided that the agreement "constitutes a lien against any recovery for any liability from any source whatsoever."
On February 25, 1986, a CNS physician performed a chemonucleolysis on Baker's back. One month later, when the first procedure had afforded Baker no relief, another CNS physician performed a laminectomy. CNS billed the workers' compensation carrier for the maximum allowed under the statutory fee schedule.[2] The carrier paid CNS about $19,000, pursuant to the schedule. In addition, CNS billed Baker for the same services at rates far in excess of the fee schedule,[3] which it claimed to be its usual and customary fees for the services provided. Based on the higher charges, CNS sought an additional $20,492.30 from Baker.
Baker settled his liability suit with the third party tort-feasor for a lump sum. No fact finder ever made any finding as to a specific element of damage or as to the liability of any party. Baker's attorney withheld the $20,492.30 sought by CNS from Baker's recovery and deposited it into his trust account. When he refused to release the funds, CNS filed suit, with counts for breach of contract, open account and quantum meruit. The trial court granted Baker's motion to dismiss.
CNS contends that language added to section 440.13(3) in 1983 permits it to enforce its contract with Baker and carve its "usual and customary" fee out of his settlement. This argument ignores chapter 440's insulation of employees from liability and its limitation on medical fees. Accepting CNS's argument would upset the balance struck by the legislature between the participants in the workers' compensation system.
Proper analysis of the 1983 amendment begins with an overview of the system established by chapter 440, Florida Statutes. The declared legislative intent of the workers' compensation law is "to assure the quick and efficient delivery of disability and medical benefits to an injured worker at a reasonable cost to the employer." § 440.015, Fla. Stat. (1993). To achieve that end, the statute provides for a schedule of maximum reimbursement allowances for medical services. § 440.13(4)(a), Fla. Stat. (1993). A health care provider or physician is to be reimbursed the lesser of either (a) the usual and customary charge for the service or (b) the maximum reimbursement allowance in the schedule. §§ 440.13(4)(a) and (f), Fla. Stat. *671 (1993).[4] By implementing a fee schedule ceiling on charges, the statute seeks to "promote health care cost containment and efficiency with respect to the workers' compensation health care delivery system." § 440.13(4)(f), Fla. Stat. (1993). Florida courts have rigorously enforced fee schedule limits against health care providers who have sought higher fees for their services. See, e.g., Easter Elevator Co. v. Hedman, 290 So.2d 56, 58 (Fla. 1974).[5] In this case, having received the maximum reimbursement allowance for the services provided, CNS may not recover any fee exceeding that amount. §§ 440.13(4)(a) and (f), Fla. Stat. (1993).
In addition to the limitation on charges, the workers' compensation law makes the employer and insurance carrier legally responsible for paying medical bills, while the employee is insulated from liability. See Long Grove Builders, Inc. v. Haun, 508 So.2d 476, 477 (Fla. 1st DCA 1987); §§ 440.10(1)(a) and 440.13(3), Fla. Stat. (1993).[6] To deliver medical benefits to the injured worker quickly and efficiently, as the Act requires, the statute cannot be read to place the worker in the position of shopping for a reasonable fee, anticipating potential liability for an amount exceeding fee schedule limits. For this reason, too, CNS is precluded from recovering additional fees from Baker.
In 1983, the legislature added language to section 440.13(3):
The health care provider or health care facility providing services pursuant to this section shall be paid for the services solely by the employer or its insurance carrier, except for payments from third parties who have been determined to be liable for such payment.
§ 440.13(3), Fla. Stat. (1983); Ch. 83-305, § 4, at 1783, Laws of Fla. It is this amendment, CNS argues, which authorizes its lawsuit against Baker. However, such an expansive reading does not harmonize with the purposes of the Act and is not supported by the legislative history and development of section 440.13(3).[7]
No reliable indicator of legislative purpose demonstrates an intent to abandon fee schedule limits or to impose liability on employees for chapter 440 medical treatment. The Florida senate staff analysis of chapter 83-305, Laws of Florida, describes the amendment to section 440.13(3) as "[p]roviding an express limitation that health care providers shall be paid solely by the employer/carrier." Staff of Fla.S.Comm. on Commerce, HB 1277, Staff Analysis 2 (rev. June 27, 1983) (available at Fla. Dep't of State, Div. of Archives, ser. 18, carton 1283, Tallahassee, Fla.). Although not determinative of legislative intent, staff analyses are one touchstone of the collective legislative will. See In re Forfeiture of $7,750, 546 So.2d 1128, 1130 (Fla. 2d DCA 1989). In 1987, section 440.13(3) was amended to clearly express the intent that the subsection not be read to impose liability on an employee except under limited circumstances. The amendment added a sentence to the end of subsection (3), bringing the wording to its current form:

*672 Subject to the provisions of paragraph (2)(b), the employee is not liable for payment for treatment or services provided pursuant to this section.
Ch. 87-330, § 2, at 2136, Laws of Fla. Because it was intended to clarify the legislature's intention, the 1987 amendment may properly be considered in gauging the correct meaning of the 1983 amendment to section 440.13(3). Ivey v. Chicago Ins. Co., 410 So.2d 494, 497 (Fla. 1982).[8] Significantly, the senate staff analysis of the 1987 amendment condemns the very practice in which CNS engaged in this case.
Providers may charge no more for a particular procedure or treatment than is allowed on the medical fee schedule or if not on the schedule, then 80 percent of the usual and customary charge. Apparently some health care providers have been billing injured employees for the difference between what is normally charged and the amount allowed in the statute.

This bill would clarify subsection 440.13(3), F.S., by reiterating the fact that the injured employee is not responsible for paying for authorized medical treatment and services.
Staff of Fla.S.Comm. on Commerce, PCS/SB 821, Staff Analysis 2 (April 24, 1987) (available at Fla. Dep't of State, Div. of Archives, ser. 18, carton 1283, Tallahassee, Fla.) (emphasis supplied).
Finally, the 1993 amendment to chapter 440 rewrote section 440.13 to eliminate the equivocal 1983 language. Ch. 93-415, § 17, at 2374-84, Laws of Fla. Section 440.13(3)(g) confirms that the employee "is not liable for payment for medical treatment or services provided pursuant to this section except as otherwise provided in this section." Id. at 2378. Most importantly, section 440.13(14), entitled "Payment of medical fees," now provides:
(a) ... A health care provider may not collect or receive a fee from an injured employee within this state, except as otherwise provided by this chapter. Such providers have recourse against the employer or carrier for payment for services rendered in accordance with this chapter.
(b) Fees charged for remedial treatment, care, and attendance may not exceed the applicable fee schedules adopted under this chapter.
Id. at 2383-84.
Given the evolution of section 440.13(3) in the context of the system established by chapter 440, CNS was barred from suing Baker in this case. The workers' compensation system is entirely a statutory creation. See, e.g., Fidelity and Cas. Co. of New York v. Bedingfield, 60 So.2d 489 (Fla. 1952). A court should not expand a cryptic statutory section to negate important aspects of the law, such as fee schedule limitations and employee non-liability. The workers' compensation law involves a legislative balancing of competing interests, creating a system of shared benefits and burdens for its participants. Although a health care provider may not charge free market rates, it receives prompt, reasonable payment for services on behalf of many patients who could not otherwise afford them. Tipping the statutory balance to allow a health care provider to pursue a larger fee requires a clearer legislative expression than is evident in section 440.13(3).
Allowing the suit in this case would give a medical provider preference over an employer/carrier in the proceeds of a recovery from a third party tort-feasor. Section 440.39, Florida Statutes (1993), contains a detailed formulation of the employer/carrier's subrogation rights. See Manfredo v. Employer's Casualty Ins. Co., 560 So.2d 1162 (Fla. 1990). Under that section, the amount of the lien is reduced by costs of collection and the employee's failure to recover full value of damages. CNS's suit here seeks the right of full recovery against settlement proceeds, without any section 440.39(3)(a) adjustments. So favoring the interests of the health care provider over those of the worker or employer/carrier is the type of value judgment proper for the legislature, but not for a court. *673 Had the legislature intended for health care providers to pursue claims against settlement proceeds, it could have expressly so stated in section 440.39.
CNS argues that it should be entitled to enforce its contract with Baker. However, it is clear that CNS was paid for services it rendered under chapter 440. A health care provider may not accept payments under the Act and also seek to avoid the statutory limits by contracting for a higher fee with the worker. To the extent that it sought compensation in excess of the fee schedule, CNS's contract contravened section 440.13 and was void. CNS further contends that a worker might unjustly enrich himself at its expense by recovering from a tort-feasor the "reasonable expense of medical care and treatment" in excess of the fee schedule limits. See Fla.Std.Jury Instr. (Civ.) 6.2(c). However, the central policy of tort law is to place a person in a position nearly equivalent to what would have existed had the tort-feasor's conduct not caused injury. E.g., Kush v. Lloyd, 616 So.2d 415 (Fla. 1992). Because the workers' compensation law places a ceiling on medical charges, an employee cannot recover past medical expenses from a third party tort-feasor which exceed the fee schedule amount already paid to the medical provider. An employee may not claim as damages an expense which, by law, cannot be charged to the employee or to the employer/carrier. The issue to be decided by the fact-finder is the reasonableness of the fee schedule charge. Garrett v. Morris Kirschman & Co., 336 So.2d 566 (Fla. 1976); Irwin v. Blake, 589 So.2d 973 (Fla. 4th DCA 1991).[9]
Absent a different pronouncement from the legislature, we believe that section 440.13(3) should be narrowly construed. For example, under that section, a health care provider could receive payments from a third party who is liable by contract, i.e. health insurance, or by law, i.e. a tort-feasor, where the employer/carrier has failed to pay. Chapter 440 precludes a health care provider, however, from bringing an action against an employee for fees based on contract, contract implied at law, or any other legal theory.
Accordingly, the judgment is affirmed.
GLICKSTEIN and KLEIN, JJ., concur.
NOTES
[1] Appellant Sun Bank/South Florida, N.A., now holds CNS's accounts receivable as a result of a foreclosure judgment.
[2] § 440.13(4)(a), Fla. Stat. (1985).
[3] For example, the fee schedule permitted a $2,020 charge for a combined discogram and chemonucleolysis. CNS's charge to Baker for this procedure was $5,200.
[4] Under the 1993 amendment to chapter 440, these limitations are now contained in section 440.13(12)(a) and (c), Florida Statutes. Ch. 93-415, § 17, at 2382-83, Laws of Florida.
[5] Reimbursement in excess of the fee schedule is authorized only "in unusual cases on the basis of individual consideration" subject to administrative rules. R.E. Ledford Constr. Co. v. King, 381 So.2d 330, 332 (Fla. 1st DCA 1980); Mt. Sinai Medical Ctr. v. Samuels, 453 So.2d 81 (Fla. 1st DCA 1984).
[6] Fortune Insurance Co. v. Figueroa, 597 So.2d 435, 436 (Fla. 3d DCA), rev. denied, 605 So.2d 1263 (Fla. 1992), contains language indicating that a medical provider may accept workers' compensation benefits and still pursue the employee for that portion of a reasonable fee which exceeds the compensation payment. That case failed to consider the explicit language of section 440.13(3), Florida Statutes (1987). Moreover, it relied on Charter Oak Fire Insurance Co. v. Regalado, 339 So.2d 277 (Fla. 3d DCA 1976), which was decided before the enactment of the limiting language similar to sections 440.13(4)(a) and (f) and 440.13(3), Florida Statutes (1993). See § 440.13(3)(a), Fla. Stat. (1979); Ch. 79-40, § 8, at 226, Laws of Fla; Ch. 93-415, § 17, at 2377, Laws of Fla. We therefore decline to follow Figueroa.
[7] We note that even under CNS's reading of section 440.13(3), it was not entitled to bring suit, because there was no determination of liability or fixing of a reasonable fee by a judge or jury.
[8] Chapter 87-330 was entitled "An act ... clarifying that an injured worker is not liable for the payment of his medical treatment... ." Ch. 87-330, at 2134, Laws of Fla. The title of enacting legislation is an indicator of legislative intent. Parker v. State, 406 So.2d 1089, 1092 (Fla. 1981).
[9] Of course, the "reasonableness" issue must be litigated at trial without disclosing the existence of workers' compensation coverage to the jury. See Kreitz v. Thomas, 422 So.2d 1051 (Fla. 4th DCA 1982).