682 So.2d 1177 (1996)
HOSPITAL CORRESPONDENCE CORP., Appellant,
v.
Frankie McRAE, Phyllis Peterson, et al., Appellees.
No. 95-3107.
District Court of Appeal of Florida, Fifth District.
November 8, 1996.
Edward M. Waller, Jr. and Hala A. Sandridge, of Fowler, White, Gillen, Boggs, Villareal and Banker, P.A., Tampa, for Appellant.
Dock A. Blanchard, of Blanchard, Merriam, Adel & Kirkland, P.A., Ocala, for Appellees.
William Alan Bell, Tallahassee, Amicus Curiae for Florida Hospital Association.
GRIFFIN, Judge.
Hospital Correspondence Corporation ["HCC"] appeals a partial summary judgment entered by the lower court which found HCC liable to a certified class represented by Frankie McRae, Phyllis Peterson, and Weiner & Cannon, P.A. ["the Representatives"]. The Representatives brought suit on behalf of all persons and entities who were charged $2 by HCC under section *1178 395.3025(1), Florida Statutes, for medical records reproduced from nonpaper sources such as microfilm or microfiche. The lower court ruled that the proper charge should have been $1. Although we approve the lower court's interpretation of section 395.3025(1), we believe the lower court erred in determining liability in favor of the Representatives without consideration of the multiple affirmative defenses.
The representatives each requested medical records from either Munroe Regional Medical Center (MRMC) or Marion Community Hospital (MCH). The requests were forwarded to HCC, a company that provides copying services to approximately forty medical facilities in Florida, including MRMC and MCH. Prior to completing the orders, HCC sent McRae and Peterson "fee approval letters" which explained the charges to be incurred and requested prepayment. McRae was charged $164 for copying 82 pages from microfilm records. Peterson was charged $784 for 264 copies from microfilm and 256 copies from paper records. McRae paid; Peterson refused. Weiner & Cannon received an invoice along with their copies which explained that $50 had been charged for 25 copies from microfiche. They paid the fee. All three parties subsequently brought a class action against HCC claiming they were overcharged.
HCC's principal defense is that section 395.3025(1), Florida Statutes authorizes a charge of $2 for each page of paper it copies from nonpaper sources such as microfilm and microfiche. Adopted by the Florida legislature in 1992, the statute provides in part:
Any licensed facility shall, upon written request, and only after discharge of the patient, furnish, in a timely manner, without delays for legal review, to any person admitted therein for care and treatment or treated thereat, or to any such person's guardian, curator, or personal representative, or in the absence of one of those persons, to the next of kin of a decedent or the parent of a minor, or to anyone designated by such person in writing, a true and correct copy of all patient records, including X rays, and insurance information concerning such person, which records are in the possession of the licensed facility, provided the person requesting such records agrees to pay a charge. The exclusive charge for copies of patient records may include sales tax and actual postage, and, except for nonpaper records which are subject to a charge not to exceed $2 as provided in s. 28.24(9)(c), may not exceed $1 per page, as provided in s. 28.24(8)(a). A fee of up to $1 may be charged for each year of records requested. These charges shall apply to all records furnished, whether directly from the facility or from a copy service providing these services on behalf of the facility....
§ 395.3025(1), Fla. Stat. (1993) (emphasis added). HCC's answer also alleged more than twenty affirmative defenses; among them were estoppel, waiver, the statute of limitations, laches, accord and satisfaction, the unconstitutionality of the statute and that the statute fails to offer a private right of recovery.
After the lower court certified the class, the parties filed cross-motions for summary judgment. HCC's motion, filed first, requested summary judgment on the basis of its interpretation of the statute. Neither the motion nor the accompanying memorandum addressed any of HCC's affirmative defenses. The Representatives responded with their own motion, requesting "partial summary judgment as to liability and/or in the alternative, as to the statutory interpretation" of section 395.3025. The motion argued liability solely on the basis of the statute and did not address HCC's affirmative defenses.
Prior to the hearing on the motions, the parties filed with the trial court numerous depositions and affidavits as well as legislative history for section 395.3025 and its predecessor. Near the end of the several hour hearing, at which the parties presented the trial judge with their interpretations of section 395.3025, HCC briefly argued that the statute as construed by the Representatives amounted to an unconstitutional deprivation of property without just compensation. When the Representatives stressed that such an argument was not addressed in the motions, HCC explained that it related to one of its affirmative defenses. Apart from this *1179 exchange, there was no discussion concerning HCC's affirmative defenses.
The trial court granted a partial summary judgment in favor of the Representatives. In the summary judgment order, the court found section 395.3025(1) clearly and unambiguously [1] to instruct licensed medical facilities and their copying services to charge no more than $1 for each page of paper copied from microfilm or microfiche. The reference in the statute to "nonpaper records," according to the trial court, pertained to materials received by a requester, rather than the sources from which such were reproduced, and the $2 charge was applicable only when a requester received nonpaper copies of medical records. The court's order concluded that HCC is liable to the Representatives for all monies it received in excess of the $1 statutorily authorized fee.
The primary issue on appeal is the proper interpretation of the language of section 395.3025(1). HCC first contends that the "nonpaper records" referred to in the statute are the source records from which copies are made to be sold to the requester. When requests are made for copies of records which are stored on microfilm or microfiche, media which it considers to be nonpaper, the applicable charge for copies may not exceed $2. The Representatives, on the other hand, urge that "nonpaper records" refers to the requested copies of patient records.
In support of their argument, the Representatives place great weight on section 28.24, the statute referenced in the medical records statute. Section 28.24 outlines the charges to be assessed by the clerks of the circuit courts for services rendered by their offices. In pertinent part, the statute provides:
The clerk of the circuit court shall make the following charges for services rendered...

(8)(a) For making copies by photographic
 process of any instrument in the
 public records consisting of pages of
 not more than 14 inches by 8½
 inches, per page ............................. 1.00
 (b) For making copies by photographic
 process of any instrument in the
 public records of more than 14
 inches by 8½ inches, per page ............... 5.00
(9) For making microfilm copies of any
 public records:
 (a) 16 mm 100' microfilm roll .................... 25.00
 (b) 35 mm 100' microfilm roll .................... 35.00
 © Microfiche, per fiche .......................... 2.00

§ 28.24(8)-(9), Fla. Stat. (1993). The Representatives urge that the references to the clerks' statute establish parallel charges for similar services. The Representatives emphasize that the medical records statute does not read "$2 per page," as it does in the case of the $1 limit, and from this they infer the legislature's intent to signify that the $2 charge would be for items other than "pages." HCC responds that "per page" modifies both dollar amounts. HCC adds that the legislature could not have intended the $1 charge to apply only to "instruments in the public record," as it does with the clerks' statute, since medical records are private and confidential, not public records. See § 395.3025(3), Fla. Stat. (1993). Finally, HCC stresses that section 28.24(9)(c) applies to microfiche but does not reference microfilm, both of which are nonpaper sources, and that a literal cross-application of the clerks' fee schedule would make the medical records statute illogical.
The medical records statute appears to have originated as section 395.202, Florida Statutes (Supp.1978). As originally enacted, the statute provided in part:
Any licensed hospital shall, upon request, and only after discharge of the patient, furnish to any person admitted therein for care and treatment or treated thereat, or such person's guardian, curator, personal representative, or anyone designated by such person in writing, a true and correct copy of all records in the possession of the hospital, except progress notes and consultation report sections of a psychiatric nature concerning the care and treatment performed therein by the hospital, provided the person requesting such records agrees to pay a reasonable charge for the copying of said records ....
*1180 § 395.202(1), Fla. Stat. (Supp.1978) (emphasis added). In 1982, the medical records statute was renumbered as section 395.017, Florida Statutes. The new statute, which was due to sunset in 1992, made use of slightly different language concerning access to patient records and added subsections that provided for the privileged and confidential status of medical records. Through 1987, the statute continued to limit fees for copying medical records only by providing that copying charges must be reasonable.
A substantial revision took place in 1988, when the legislature began direct regulation of copying charges by imposing maximum fees. The amended statute read, in part:
Any licensed facility shall, upon request,... furnish to any person admitted therein for care and treatment or treated thereat,... a true and correct copy of all patient records, including X rays, concerning such person, which records are in the possession of the licensed facility, ... provided the person requesting such records agrees to pay a charge. The charge, except for X rays, may not exceed the fee charged per page for copying records by the clerk of the county court of the county in which the licensed facility is located. ...
§ 395.017, Fla. Stat. (Supp.1988) (emphasis added). Thus the fees charged by the medical facilities were to be capped at costs consistent with the fees charged by the clerks' offices.[2] The limit did not, however, apply to X-rays. The house of representatives' final staff analysis and economic impact report from this amendment, a proper item to consider when attempting to trace legislative intent, see Sun Bank/South Florida, N.A. v. Baker, 632 So.2d 669, 671 (Fla. 4th DCA), cause dismissed, 639 So.2d 982 (Fla.1994), explained that the revision could result in a loss of revenue for medical facilities, but it added that the recipients of the savings would be former patients. Staff of Fla. H.Comm. on Health Care, HB 498, Staff Analysis & Economic Impact Statement, June 16, 1988.
In 1992, as the 1982 revision was due to sunset, the legislature substantially revised chapter 395. The medical records statute was again renumbered, this time to section 395.3025, and subsection (1) of this revision is the statute at issue in this case. Several changes in the statute are relevant. First, there is now an "exclusive" copying charge as formulated by the statute. Second, the statutory formula allows for the assessment of charges for sales tax and actual postage as well as up to a $1 fee for each year of records requested. Third, the formula is tied to the charges of the circuit court clerks, rather than the county court clerks. Fourth, the charge limitation is applicable not only to licensed medical facilities in possession of the records, but copying services as well. Fifth, the term "nonpaper" is utilized for the first time. Finally, X-rays are no longer explicitly exempted from the charge limitation.
According to the bill analysis provided to the legislature by the house committee on health care, the 1992 amendments involved a comprehensive rewrite of chapter 395 intended to eliminate the lack of continuity and purpose that had developed in the chapter through years of piecemeal amendments. Fla.H.Comm. on Health Care, CB/HB 265-H, Bill Analysis & Economic Impact Statement, June 2, 1992. In giving an overview of the new changes, the statement explained:
[A] more uniform approach to patient record charges should be realized by establishing copying fees which are consistent with the fees administered by the Clerk of the Circuit Court and by establishing a charge for each year of records that is requested to be searched.
Id. at 6. With respect to the enactment of section 395.3025(1), the statement concluded:
Section 32. Renumbers s. 395.017, F.S., as s. 395.3025, F.S., to require a written request prior to the release of any patient records. Patient records charges are revised to reflect a copying fee consistent with the fees affixed by the Clerk of the Circuit Court regarding paper and non-paper documents, and may include a *1181 charge for each year that is requested to be searched and sales tax and postage.
Id. at 12. The parties find different meanings in the language of these analyses. The Representatives contend that in making copying fees "consistent with" the charges utilized by the clerks' offices, the legislature intended to impose similar charges for similar services provided by both the clerks' offices and medical facilities or copying services. HCC finds this language "none too clear" but offers its interpretation that the analyses evidence the legislature's intent to create uniformity among medical facilities and copying services for their charges and to cap the charges at either $1 or $2.
In arguing that the trial court's interpretation of section 395.3025(1) was erroneous, HCC focuses on the difference in the costs of reproducing documents stored on paper compared with the costs of reproducing documents stored on microfilm or microfiche. A wealth of information was provided by HCC to the trial court detailing the greater amounts of time involved in the paper reproduction of microform[3] documents. Testimony was also offered by HCC concerning the differences in the labor expended by the clerks' offices in fulfilling copy requests and that expended by medical facilities. HCC complains on appeal that this information was ignored by the trial court.
We conclude that the lower court correctly determined that section 395.3025(1) requires medical records providers such as HCC to charge no more than $1 for paper copies printed on 8½ × 14" or smaller paper, regardless of whether the source for the copy was a paper, microfilm or microfiche record. First, the plain language of the statute explains that the $1 charge is to be assessed, with a single exception, in all cases "as provided in" section 28.24(8)(a). The exception, the $2 charge, applies only to nonpaper copies "as provided in" section 28.24(9)(c). Importantly, the referenced provisions of section 28.24, the clerks' statute, differentiate between charges based not on the medium of the source record, but on the form of the reproduction actually purchased from the clerk. Construing the medical records statute to operate "as" does the clerks' statute, then, the exception to the $1 charge in section 395.3025(1) applies only to nonpaper copies actually purchased by a former patient. To construe the statute otherwise would render the "as provided in" language superfluous.[4]See Beyel Bros. Crane and Rigging Co. v. Ace Transp., Inc., 664 So.2d 62, 65 (Fla. 4th DCA 1995).
Second, the legislature is presumed to have a working knowledge of the English language and to know the ordinary rules of grammar. 49 Fla. Jur.2d Statutes § 129, at 173 (1984). An examination of the second sentence in section 395.3025(1) reveals that charges are assessed to a former patient at $1 per copied page, as the "exclusive charge for copies" may not exceed "$1 per page." The exception for "nonpaper records," therefore, modifies the $1 charge per page of copied records, not some reference to paper source materials, and thus the sentence provides that the $2 charge applies to nonpaper copies of records.
Next, the House of Representatives' final staff analysis is entitled to weight. See Sun Bank/South Florida, 632 So.2d at 671. This history reveals that the legislature was presented with information which explained that the purpose of the statute's revisions was to make charges by medical records providers consistent with those of the circuit court clerks' offices. We note that the clerks' statute requires a specific charge for each function of the clerks' offices, whereas the medical records statute prescribes only a maximum charge. In this sense, the fees may be said to be "consistent" while not necessarily uniform. The legislature's goal appears to have been to expressly establish parallels between the clerks' statute and the medical records statute with regard to how *1182 charges are chiefly differentiatedrelative to the type of material obtained by the records purchaser.[5] HCC's argument that the medical records statute is not written to parallel the clerks' statute because the clerks may only assess the $1 fee under section 28.24(8)(a) for photocopying "instruments in the public record" is likewise rejected. The portions of the statute in pari materia are the charging schemes created by the legislature. Each statute independently controls what materials are subject to copying charges.
Finally, we believe our interpretation of section 395.3025(1) produces the most commonsense result. The price paid by the purchaser of medical records varies with the product received. HCC's interpretation of the statute places great emphasis on the format of the stored records, a format which is controlled by medical facilities and copying services.[6] A patient has no hand in the decision of when or if a medical facility will place its paper records on microfilm or microfiche, yet under HCC's interpretation of section 395.3025(1), the patient's costs for obtaining copies of medical records could vary by 100 percent depending on the medical facility's chosen form of storage.
In sum, we hold that section 395.3025(1) required HCC to charge no more than $1 per page for paper copies of medical records requested by former patients regardless of whether the source of the copies was paper, microfilm or microfiche.
We nevertheless conclude that the lower court erred in rendering a partial summary judgment on liability without proper treatment of the defenses raised. HCC had the right to notice that its affirmative defenses were at issue in the summary judgment proceeding and to demand that the Representatives demonstrate the lack of factual support for or the legal insufficiency of its affirmative defenses. Fla. R. Civ. P. 1.510(c); Delandro v. America's Mortgage Servicing, Inc., 674 So.2d 184, 186-87 (Fla. 3d DCA 1996); Johnson v. Claims Prevention & Management Servs., Inc., 673 So.2d 558 (Fla. 1st DCA 1996); Gulf Ins. Co. v. Stofman, 664 So.2d 1083 (Fla. 4th DCA 1995); see also Knight Energy Servs., Inc. v. Amoco Oil Co., 660 So.2d 786, 788 (Fla. 4th DCA 1995), review denied, 670 So.2d 937 (Fla.1996); Board of Trustees of the Internal Improvement Trust Fund v. Schindler, 604 So.2d 569, 570 (Fla. 2d DCA 1992). We accordingly affirm the decision as limited in this opinion and remand to the lower court for further proceedings consistent with this opinion.
AFFIRMED in part; REVERSED in part; and REMANDED.
W. SHARP and THOMPSON, JJ., concur.
NOTES
[1] While we agree with the lower court's interpretation of the statute, we could not say that the statute is either clear or unambiguous.
[2] Since 1970, section 28.231, Florida Statutes, has provided that county and other state trial courts "shall receive as compensation for similar services the same charges as provided in this chapter for the clerk of the circuit court."
[3] The term "microform" is intended to encompass all microprinted media, particularly microfilm and microfiche.
[4] Otherwise, the legislature might simply have written that the exclusive charge for copies would be $1 for copies from paper records and $2 for copies from nonpaper records. The reference to section 28.24 would be entirely unnecessary.
[5] Copying charges for the clerks' offices are also dependent in part on the type of process used to make the copies, i.e. photographic and non-photographic. This observation does not support HCC's argument that the prices for copies of medical records should vary by the type of material on which the providers have chosen to store the records.
[6] HCC admits that the originals of the medical records were all paper records.