DECISION
Plaintiff, Rhode Island Orthopedic Society (Orthopedic Society) petitions this Court for declaratory relief pursuant to G.L. 1956 § 9-3-1, et seq. The matter at issue involves the application of a fee schedule promulgated under G.L. 1956 § 28-33-7 of the Workers' Compensation Act entitled "Health service provider reimbursement."
The defendant is Blue Cross Blue Shield of Rhode Island (Blue Cross). Additionally, the Rhode Island Medical Society (RIMS) submitted an amicus curiae brief. The parties present an Agreed Statement of Facts. The aforementioned fee schedule is the Rhode Island Workers' Compensation Medical Fee Schedule (Schedule) in its most recent form. Prior to July 1995, Blue Cross adhered to this Schedule to process, set, determine, and establish allowances, reimbursements, and amounts paid to participating orthopedic physicians for treating work-related injuries. As of July 1995, Blue Cross has not followed the Schedule, opting instead to promulgate and use its own fee schedule for the purpose, among others, of setting amounts paid to participating orthopedic physicians for treating work-related injuries. A series of comprehensive fee schedules issued by Blue Cross for application to work-related injuries are offered as exhibits by the parties.
Members of the Orthopedic Society, both orthopedic surgeons and physicians, are under contract with Blue Cross pursuant to so-called "Participating Physician Contracts." By signing such a contract, a physician is termed a "participating physician." Contract terms prohibit a participating physician from engaging in "balance billing," a practice whereby the treating physician charges the patient or responsible third party a fee in excess of that fee set forth in Blue Cross' own fee schedules.
Since July 1995, Blue Cross has limited participating orthopedic physicians requesting payment for treating work-related injuries to the fees set forth in Blue Cross' own fee schedules. The Blue Cross fee schedules are lower than the rates of reasonable compensation established in the Workers' Compensation Schedule. Thus, since July 1995, fees paid by Blue Cross to the participating physicians treating work-related injuries are lower than the rates of reasonable compensation established in the Schedule.
Again, since July 1995, it has been the policy and practice of Blue Cross to exclude from further participation, and to terminate the Participating Physician Contract of any physician who engages in so called "balance billing." Balance billing additionally involves the physician charging a fee for the treatment of work-related injuries in excess of the amount set by the applicable Blue Cross fee schedule and/or who petitions the Rhode Island Workers' Compensation Court for a fee in excess of the amount set by the applicable Blue Cross fee schedule.
However, Blue Cross does not limit the fees of non-participating physicians (those not party to a Participating Physician Contract with Blue Cross) to those set forth in Blue Cross' own fee schedules, but rather, pays non-participating physicians the rates of reasonable compensation established in the Rhode Workers' Compensation Medical Fee Schedule.
 Jurisdiction
Initially, Blue Cross asserts this Court's lack of jurisdiction over this Workers' Compensation dispute; that such a petition properly belongs in the court specifically created for such matters, the Workers' Compensation Court. See G.L. 1956 § 28-3-1 et seq.
This Court agrees that a petition for a fee increase, in accordance with the clear direction of G.L. § 28-33-7 (a), should be set before the Workers' Compensation Court in accordance with the plain language of that statute. Id. Additionally, typical or general workers' compensation matters do fall within the jurisdiction of the Workers' Compensation Court. G.L. 1956 §28-35-11. Further, Blue Cross alleges the rendering of a declaratory judgment by this Court to be improper in light of the argument as presented by RIMS, that necessary parties to the action are not present. See G.L. 1956 § 9-30-11; Sullivan v.Chafee, 703 A.2d 748 (1997); Thompson v. Town Council,487 A.2d 498 (R.I. 1985).
An action seeking declaratory judgment is a method by which a party can ask the court for a declaration of rights, status, and other legal relations when such rights, status, or legal relations are affected by a statute. G.L. 1956 § 9-30-1 et seq.
An interested party may also have the court, in its discretion, evaluate the validity and construction of a contract. Id. Here, physicians, members of the Orthopedic Society, are under contract with Blue Cross. The terms and validity of that contract are in question. The interaction between these contracts and a Workers' Compensation statute is also at issue. Therefore, this Court, having found the requisite justiciable controversy, will exercise its discretion and render a declaratory judgment. Berberian v.Travisono, 114 R.I. 269, 332 A.2d 121 (1975). In doing so, the Court acknowledges the purpose of the Uniform Declaratory Judgment Act to be the termination of controversies. Fireman'sFund Ins. Co. v. E.W. Burman, Inc., 120 R.I. 841, 391 A.2d 99
(1978). This Court finds the necessary parties before it, both sides to the participating physician contract (or a representative thereof). Although it is agreed that third parties may have a potential interest in the matter, the controversy at this stage narrowly involves the named litigants. Finding all interested parties to the contract present, this Court proceeds. G.L. 1956 § 9-30-11. This result is in accord with the intended liberal construction and application of the Uniform Declaratory Judgment Act. G.L. 1956 § 9-30-5, § 9-30-12.
 Workers' Compensation Medical Fee Schedule
The parties contest the language and intent of G.L. 1956 § 28-33-7 (a). The statute calls for the establishment of a schedule of rates of reimbursement for common medical and dental services provided to employees receiving workers' compensation. G.L. 1956 § 28-33-7 (a). The Department of Labor formulated such a schedule entitled the "Rhode Island Workers' Compensation Medical Fee Schedule" that remains in effect. Department of Labor, Public Document 94-01.
Summarily, the Orthopedic Society states that the language of the statute is mandatory; it emphasizes the use of the word "shall" as demonstrative of that intent. Blue Cross, on the other hand, argues that the schedule is a "cap"; a schedule of reimbursement which cannot be exceeded except in unusual circumstances. Blue Cross further states that the statute sets the schedule as a ceiling, but not as a floor.
Due to the real or seeming ambiguity in a reading of the statute, this Court will apply rules of statutory construction to glean the intent of the section. Rhode Island State Police LodgeNo. 25 v. State, 485 A.2d 1245, 1247 (R.I. 1984). The statute must be considered in its entirety and given a meaning "most consistent with its policies or obvious purposes." City ofWarwick v. Almac's Inc., 442 A.2d 1265 (R.I. 1982).
 The statute reads as follows:
 28-33-7. Health service provider reimbursement. — (a) Any dispute as to the reasonableness of the amount of any charge and/or payment for medical, dental, or hospital services or for medicines or appliances shall be determined by the workers' compensation court after a hearing, and the decision shall be final; provided, however, that the director of the department of labor, in consultation with the workers' compensation court, and representatives of all appropriate medical disciplines practicing within the state of Rhode Island, shall establish a schedule of rates of reimbursement for those medical and dental services, excluding non physician hospital charges, which are most often provided to employees receiving workers' compensation. The schedule shall be published by the director utilizing the Physician's Current Procedure Terminology (CPT) coding system as published by the American Medical Association. The director shall update and revise the schedule as necessary. In setting the rate of reimbursement for any service or procedure, the director shall determine, based upon available data, the ninetieth (90th) percentile of the usual and customary fee charged by health care providers in the state of Rhode Island and the immediate surrounding area, and in no case shall the rate of reimbursement exceed that amount. The liability of the employer or insurer for any charges and/or payment shall be limited to the rates of reimbursement set forth in this schedule; provided, however, that petitions may be filed in cases where the reasonableness of a particular rate is questioned, but the court shall be limited to a determination as to whether the rate, as applied in the particular case, is reasonable. . . .
A natural reading of the statute evidences the intent of the legislature; an intent to set a cap on services. See FalstaffBrewing Re: Narragansett Brewery Fire, 637 A.2d 1047 (R.I. 1994). It appears that the statute establishes a reimbursement scheme whereby both a maximum reimbursement to providers and maximum
liability of employers/insurers is provided. This meaning is drawn from the following phrases, "[i]n setting the rate of reimbursement for any service or procedure, the director shall determine, based upon available data, the ninetieth (90th) percentile of the usual and customary fee charged by health care providers in the state of Rhode Island . . . and in no case shall the rate of reimbursement exceed that amount" and "[t]he liability of the employer or insurer for any charges and/or payment shall be limited to the rates of reimbursement set forth in the schedule." (An exception is provided, allowing higher, if reasonable, fee reimbursement to a service provider upon the provider's demonstration of out of the ordinary services.) G.L. 1956 § 28-33-7 (a).[1] Both the rate of reimbursement to providers and the liability of employers and insurers are "limited" to a maximum figure. Such a method of fee-setting naturally implies that increments of reimbursement below this limit are feasible.[2] Had the legislature intended a mandatory schedule, it would have chosen a definitive phrase such as "the rate shall be" without the modifying language of "exceed" and "limited" which is in fact present. The modifying language chosen evidences the legislative intent that the fee schedule serve as a ceiling.
This reading of the statute, in fact, furthers public policy issues under consideration at the time of the drafting of the act. See Richards, 442 A.2d at 1272. Effective medical treatment and the expeditious return of rehabilitated workers to the work force, the Orthopedic Society states, is the overriding intent of the Workers' Compensation Act. To meet the aforesaid goal "[t]he workers' compensation law involves a legislative balancing of competing interests, creating a system of shared benefits and burdens for its participants. Although a health care provider may not charge free market rates, it receives prompt, reasonable payment for services on behalf of many patients who could not otherwise afford them." Sun Bank/South Florida, N.A., 632 So.2d at 672.
Blue Cross is thus in a position to negotiate a contract, as it has done, at fees lower than those fees provided in the Schedule. The Schedule serves as a cap, above which reimbursement for treatment/services of work-related injuries or illnesses cannot rise, barring unusual circumstances. This Court will not interfere with a lawful contract that is the result of the bargaining of two sophisticated parties. It appears that if a participating physician is truly displeased with negotiated terms as they stand, he or she may withdraw from the contract with simply 90 days notice.
 "Covered Services"
The RIMS raises an issue in regard to "covered services" as provided for in Blue Cross Subscriber Agreements. These Subscriber Agreements are, in turn, incorporated by reference into the Participating Physician Contract. In accordance with the Subscriber Agreement, employment related injuries are not "covered," i.e., Blue Cross will not pay for these services (Blue Cross will not pay because the subscriber's employer/agent is required to do so). As a result, the RIMS argues, Blue Cross would have to apply the Workers' Compensation Fee Schedule for such non-covered services which are not a part of the Participating Physician Contract to which the Blue Cross Fee Schedule applies.
Blue Cross, in response, states that the RIMS argument is flawed because it is based on an out-of-date (January 1994) Subscriber Agreement. Such agreement, Blue Cross states, underwent amendment in both 1996 and 1998. Blue Cross does not, however, provide to the court a copy of the amended agreements and, in fact, states the applicable section entitled "Employment-Related Injuries" to be "substantially similar" to the January 1994 Classic Blue Subscriber Agreement presented by the RIMS.
Section 6.8 of the current version, as relayed by Blue Cross, "`states that, although the agreement does not generally cover surgical, medical or other services for which [an] Employer/agent is required to pay when performed to treat work-related illnesses, conditions or injuries,' such services are covered for individuals who are self-employed or a member of a partnership. Further, Section 6.8 unambiguously and unequivically [sic] states that an individual whose employer is self-insured against workers' compensation liabilities and for whom Blue Cross provides administrative claims management is deemed to be a subscriber receiving services under the subscriber agreement for purposes of any participating agreement between Blue Cross and a provider of professional services." (Emphasis supplied.)
In construing this term, without the assistance of a proper exhibit, it appears that a "gap" in coverage under the Subscriber Agreement and Participating Physician Contract may arise, i.e.,
services are apparently not covered for individuals who are neither self-employed, a member of a partnership, nor an employee of a self-insured employer for which Blue Cross provides administrative claims management. For example, a scenario may arise in which an individual subscriber, whose employer is not self-insured, seeks treatment for work-related injuries from a participating physician. Such treatment would not be covered. In such a case, it can be reasonably inferred that the Blue Cross fee schedule would not apply to those services and thus the Workers' Compensation Schedule would serve as the default mechanism by which to determine reimbursement.[3]
Having reviewed the statute, this Court declares that the Workers' Compensation Fee Schedule promulgated under G.L. 1956 § 28-33-7 serves as a ceiling to reimbursement. Parties are free to negotiate for fees below this schedule. In the event fee terms between parties are not provided for, the statutory fee schedule is to serve as the default mechanism by which to determine those fees.
Counsel shall submit an appropriate judgment for entry.
[1] This interpretation is in accord with the interpretation applied by several sister states with respect to the fee schedules promulgated under their Workers' Compensation Acts. Interpretive assistance can be gained by looking to the construction of comparable statutes in other states. SutherlandStat Const. § 52.03 (5th Ed). Rhode Island clearly adopted this principle. In Re Advisory Opinion To The Governor, 504 A.2d 456
(1986)
Massachusetts employs the following language in its Workers' Compensation Act,
 [T]he rate of payment by insurers for health care services adjudged compensable under this chapter shall be established by the division of health care finance and policy under the provisions of chapter one hundred and eighteen G; provided however, that a different rate for services may be agreed upon by the insurer, the employer and the health care service provider.
 Mass. Gen. Laws Ann. ch. 152, § 13 (1) (West 1998).
The language of the Massachusetts statute is more explicit, but the result achieved by both the Rhode Island and Massachusetts statute is the same; the schedule is a default mechanism.
Florida also provides a scheme whereby a maximum reimbursement allowance, as set by a fee schedule, serves as a default provision. Fla. Stat. Ann. § 440.13 (West 1998). Three options may come to bear under the Florida system: reimbursement according to the fee schedule, the physician's usual and customary charge for treatment, or the agreed-upon contractprice, whichever is less. Id.; Sun Bank/South Florida, N.A. v.Baker, 632 So.2d 669 (Fla. App. 4 Dist. 1994) (fee schedule serves as a ceiling on charges).
[2] "Limit" is defined as "the utmost extent." WEBSTER'S NINTH NEW COLLEGIATE DICTIONARY 693 (9th ed. 1991).
[3] However, the Court will assume that no "gap" will arise because Blue Cross states that the Subscriber Agreement has been amended so as to now provide coverage for subscriber work-related injuries.