DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**CALVIN MELVIN,**
Appellant,

v.

**STATE OF FLORIDA,**
Appellee.

No. 4D15-4071

[May 9, 2018]

Appeal from the Circuit Court for the Seventeenth Judicial Circuit, Broward County; Matthew I. Destry, Judge; L.T. Case No. 13-4752 CF10A.

Carey Haughwout, Public Defender, and Tatjana Ostapoff, Assistant Public Defender, West Palm Beach, for appellant.

Pamela Jo Bondi, Attorney General, Tallahassee, and Jeanine Germanowicz, Assistant Attorney General, West Palm Beach, for appellee.

LEVINE, J.

Appellant appeals his convictions and sentences for three counts of providing false information to law enforcement in a missing child investigation. Appellant raises several issues, including that the trial court erred in denying his motion to dismiss and in finding that a non-state prison sanction presented a danger to the public. We affirm the denial of the motion to dismiss based on the plain language of the statute under which appellant was charged. However, we reverse appellant's sentence because the trial court's order was insufficient to support a finding that appellant was a danger to the public. We affirm the remaining issues without comment.

Appellant was charged with three counts of providing false information to law enforcement during the investigation of his missing child. He made the allegedly false statements on January 9 and 10, 2013. On January 11 and 12, the child's skeletal remains were found in the backyard of the residence appellant had shared with Brittney Cierra, who was his girlfriend and the deceased child's mother. Forensics determined that the child had died in July 2011 at the age of five months, around the same time the child

had gone missing.

Appellant moved to dismiss the charges, arguing there was no nexus between the false information he provided to law enforcement and the child's death since the child had died a year and a half before he gave the false information. The state argued that the statute and jury instruction did not contain any language requiring a causal connection. The trial court agreed with the state and denied the motion to dismiss. Thereafter, appellant entered an open plea to the charges, reserving the right to appeal the denial of his motion to dismiss.

Testimony during the sentencing hearing revealed that on January 9, 2013, Child Protective Services and a police officer went to appellant and Cierra's house to investigate the well-being of the children residing there. According to a report, Cierra used drugs, verbally abused the children, and threatened to physically harm them. At the house, when questioned about the missing child's whereabouts, appellant told the authorities that the child was with the paternal grandmother. When the child could not be located, a detective became involved in the case.

The next day, during a five-hour long interview with the police, appellant repeatedly stated that the child had been taken to a fire station. Towards the end of the interview, appellant admitted he believed the missing child was dead because he had an argument with Cierra and left for a couple of months. When he came back, Cierra said, "[I]f you love me . . . you will forgive me," but would not tell him what she was referring to. He told the detectives to "look under the ground" behind the house where appellant used to live with Cierra and drew a map for the detectives. A search of the backyard revealed the skeletal remains of the missing child.

Appellant testified that he lied to the police because he was "in love, and being stupid." According to appellant, Cierra threatened to harm the children every time he left her. Appellant also testified he told the police that there was a spot in the backyard where Cierra would sit and cry.

After the hearing, the trial court found that imposing a non-state prison sanction on appellant would present a danger to the public. The court stated:

> Through his lies and misdirection, the Defendant confused
> and delayed the investigation in the disappearance of a child,
> his child, who was ultimately found dead and buried in his
> own backyard. The Defendant's actions put other young
> children at risk; most directly those who lived in the home

2

with him and his paramour.  His actions would allow others to carry out violence against children with potential impunity.

The trial court sentenced appellant to consecutive terms of five years' imprisonment on two counts and time served on the third count.

"Because a motion to dismiss pursuant to rule 3.190(c)(4) requires the lower court to make a pretrial determination of the law of the case when the facts are not in dispute, the standard of review on appeal is de novo." *State v. Benjamin*, 187 So. 3d 352, 354 (Fla. 4th DCA 2016) (citation omitted).  "The interpretation of a statute is a purely legal matter and subject to review de novo." *State v. Brock*, 138 So. 3d 1060, 1062 (Fla. 4th DCA 2014).

Appellant was charged with three counts of violating section 837.055(2), Florida Statutes (2013).  This statute was enacted in the wake of the Casey Anthony case.  In that case, the defendant made false statements to the police during an investigation into the disappearance of her young daughter.  *Anthony v. State*, 108 So. 3d 1111, 1113 (Fla. 5th DCA 2013).  The child's remains were later discovered near the defendant's family home.  *Id.* at 1116.  The defendant was convicted of four counts of providing false information to a law enforcement officer, a first-degree misdemeanor.  *Id.* at 1117.

As a result of *Anthony*, the legislature enacted section 837.055(2), creating a third-degree felony when a person

> knowingly and willfully gives false information to a law enforcement officer who is conducting a missing person investigation involving a child 16 years of age or younger with the intent to mislead the officer or impede the investigation, and the child who is the subject of the investigation suffers great bodily harm, permanent disability, permanent disfigurement, or death . . . .

§ 837.055(2), Fla. Stat. (2013).

Thus, the plain language of the statute requires two elements: (1) knowingly and willfully giving false information to law enforcement during a missing child investigation, and (2) the child suffering great bodily harm, permanent disability, permanent disfigurement, or death.  *See id.*  In this case, both elements of the statute were met.  As such, we find the trial court did not err in denying the motion to dismiss based on the plain language of the statute.  *See Schoeff v. R.J. Reynolds Tobacco Co.*, 232 So.

3

3d 294, 313 (Fla. 2017) ("When the language of the statute is clear and unambiguous and conveys a clear and definite meaning, there is no occasion for resorting to the [secondary] rules of statutory interpretation and construction; the statute must be given its plain and obvious meaning.") (Lawson, J., concurring) (citation omitted).

As to the sentencing issue, because appellant scored less than twenty-two points on the sentencing guidelines, the trial court was statutorily required to impose a non-state prison sanction unless the court made written findings that a non-state prison sanction would present a danger to the public. *See* § 775.082(10), Fla. Stat. (2013). In considering the propriety of an upward departure from a non-state prison sanction, a court may consider "criminal history, victim injury, and propensity for one to commit future crimes." *Reed v. State*, 192 So. 3d 641, 646 (Fla. 2d DCA 2016).

In *Jones v. State*, 71 So. 3d 173 (Fla. 1st DCA 2011), the trial court found the defendant a danger to the public after he was convicted of driving while his license was suspended. The trial court reasoned that the defendant was likely to continue to drive without a license, which would endanger the public because it made it more likely he would attempt to elude law enforcement officers. The First District reversed, finding that "the court did not make sufficient findings . . . that imprisonment within the state prison system rather than the county jail would better deter him from continued unlicensed driving." *Id.* at 176.

In contrast, in *Porter v. State*, 110 So. 3d 962 (Fla. 4th DCA 2013), this court upheld a prison sentence for a defendant convicted of grand theft because the trial court articulated sufficient facts to sustain the requisite written finding that the defendant was a danger to the public. The trial court found, inter alia, that the theft was accomplished by writing a worthless check, which was consistent with the defendant's lifelong modus operandi; that the defendant caused significant financial and emotional damage; and that he would continue to commit financial crimes against the public if not incarcerated. *Id.* at 964. Thus, the *Porter* court made sufficient written findings as to "criminal history, victim injury, and propensity for one to commit future crimes." *See Reed*, 192 So. 3d at 646.

Like in *Jones*, and unlike in *Porter*, here the trial court's written order did not articulate sufficient facts to sustain a finding that appellant was a danger to the public as required by the statute. The trial court did not explain how appellant's actions "put other young children at risk." Nor did the trial court state how the lies appellant told on January 9 delayed the investigation when he confessed the very next day and the remains

4

were found a day or two later. The trial court also did not make any findings as to appellant's lack of any criminal history or propensity to commit future crimes. Because the trial court did not make sufficient findings that imprisonment within the state prison system rather than county jail or another potential non-state prison sanction would deter him from committing future crimes, we reverse appellant's sentence and remand for the trial court to impose a non-state prison sanction. *See id.* at 648.

*Affirmed in part, reversed in part.*

WARNER, J., concurs.
GROSS, J., concurs specially with opinion.

GROSS, J., concurring specially.

I concur in the majority opinion. One possible reading of section 837.055(2), Florida Statutes (2013), is that the child who is the subject of investigation suffers harm *after* the giving of the false information, without there being any causal connection. If a criminal statute is ambiguous, we would normally apply the rule of lenity in section 775.021(1), Florida Statutes (2017), and construe the statute "most favorably to the accused."

As the majority notes, the legislature amended the statute in response to the Casey Anthony case, where the death of a child preceded a mother's giving of false information. We know this from the legislative history. *See* Florida Staff Analysis, H.B. 37, 4/10/2012. "Although not determinative of legislative intent, staff analyses are one touchstone of the collective legislative will." *Sun Bank/South Florida, N.A. v. Baker*, 632 So. 2d 669, 671 (Fla. 4th DCA 1994). We should not ignore the clear legislative history and engage in a hypertextual analysis of the statute to arrive at a result that the legislature sought to avoid in enacting the statute.

\*          \*          \*

***Not final until disposition of timely filed motion for rehearing.***