PER CURIAM.
Appellant was sentenced to three years in prison for driving while his license was cancelled, suspended, or revoked. He does not challenge his conviction on ap *174 peal; he only challenges his sentence. He contends that the trial court erred in imposing a prison sentence because the record does not support the court’s finding pursuant to section 775.082(10), Florida Statutes (2009), that a nonstate prison sanction would present a danger to the public. Alternatively, Appellant contends that his prison sentence violates Apprendi[1] and Blakely[2] because it exceeds the non-state prison sanction required by section 775.082(10) and is based on a finding made by the court rather than the jury. We reverse on the first issue and, thus, do not reach the Apprendi/Blalcely issue.[3]
On July 24, 2009, Appellant was observed by a law enforcement officer driving his brother’s pick-up truck. Appellant was the only occupant in the truck, and after the officer observed Appellant illegally park the truck, he made contact with Appellant and asked for his driver’s license. Appellant replied that he did not have a valid license, and after the officer checked Appellant’s information against the records of the Department of Highway Safety and Motor Vehicles, he arrested Appellant as a habitual traffic offender.
Appellant proceeded to trial and the jury returned a guilty verdict. The trial court noted that Appellant’s conviction was a third-degree felony, subjecting him to up to five years in prison even though he only had 8.2 points on his sentencing score-sheet. Appellant argued that, pursuant to section 775.082(10), the court could not impose a prison sentence absent a finding that a nonstate prison sanction could present a danger to the public. The trial court thereafter sentenced Appellant to three years in prison based on the following written findings:
1. Defendant has evinced an unwillingness to discontinue driving without a driver’s license, despite repeated punishment by the Courts;
2. Driving without a license endangers the public due to the probability of Defendant’s attempting to elude law enforcement due to his suspended license, which could lead to a high speed automobile chase;
3. Another danger to the public is that Defendant’s insistence on driving without a license also requires that he drive without automobile insurance, as an unlicensed driver, such as Defendant, cannot have insurance to assist a victim should he be involved in an accident; and
4. Defendant’s unavailability to drive due to incarceration in State prison is the only method open to the Court for the protection of the public from Defendant’s irresponsible and dangerous behavior.
Appellant contends that these findings are not supported by the record and, therefore, the trial court erred in imposing a prison sentence under section 775.082(10). We agree.
Section 775.082(10) provides:
If a defendant is sentenced for an offense committed on or after July 1, 2009, which is a third degree felony but not a forcible felony as defined in s. 776.08, and excluding any third degree felony *175 violation under chapter 810, and if the total sentence points pursuant to s. 921.0024 are 22 points or fewer, the court must sentence the offender to a nonstate prison sanction. However, if the court makes written findings that a nonstate prison sanction could present a danger to the public, the court may sentence the offender to a state correctional facility pursuant to this section.
The clear purpose and obvious intent section 775.082(10) was to keep certain offenders out of the state prison system.[4] The statute operates similarly to the pre-Criminal Punishment Code sentencing guidelines[5] by establishing a presumptive sentence from which the trial court may deviate up to the statutory maximum in limited circumstances and only if the court explains its reasons in writing. The first sentence of the statute provides that the presumptive mandatory sentence for qualifying offenders is a “nonstate prison sanction.” § 775.082(10), Fla. Stat. The statute does define “nonstate prison sanction,” but the phrase is commonly understood to mean probation, community control, or imprisonment in the county jail for up to one year.[6] The second sentence of the statute allows the trial court to deviate from the presumptive sentence and impose a prison sentence, but only if the court specifically finds that sentencing the offender to a nonstate prison sanction could present a danger to the public. Id. The trial court’s findings must be in writing. Id.; see also Hutto v. State, 50 So.3d 85 (Fla. 1st DCA 2010).
There is very little case law interpreting section 775.082(10). The only case reviewing the sufficiency of the findings made by the trial court to justify a prison sentence, rather than a nonstate prison sanction, is McCloud v. State, 55 So.3d 643 (Fla. 5th DCA 2011). In that case, the defendant *176 pled guilty to two counts of petit theft and was sentenced to two years in prison followed by two years of community control. Id. at 644. At the trial court, the defendant argued that he did not pose a danger to the public because he had no history of violence. Id. The trial court found, however, that the defendant was a danger to the public because his “larcenous behavior was so well-known and frequent that when he was seen in a neighborhood, additional police resources were deployed to his location.” Id. The Fifth District upheld the defendant’s prison sentence on the basis that the defendant was a “habitual thief and presents a threat to property.” Id. at 645. The court specifically held that “ ‘danger may, at least in some cases, encompass pecuniary or economic harm.’ ” Id. at 644 (quoting U.S. v. Reynolds, 956 F.2d 192, 192-93 (9th Cir.1992)); see also id. at 645 (concluding that there is “nothing in the language of section 775.082(10) that suggests that the Legislature intended to limit the meaning of ‘danger to the public’ only to persons threatening physical violence or injury”).
We agree with the reasoning of Fifth District in McCloud that a danger to the public does not require a history of violence and can be based on economic or other types of harm. However, the record in this case does not support the trial court’s finding regarding Appellant’s potential future dangerousness. Although Appellant’s history of driving without a license arguably supports the trial court’s finding that he will continue to do so, the court did not make sufficient findings and the record does not suggest that imprisonment within the state prison system rather than the county jail would better deter him from continued unlicensed driving. Nor is there any record support for the court’s implicit finding that one year of incarceration in the county jail would constitute a significantly lesser deterrent for Appellant than three years in state prison. The trial court’s additional findings are speculative at best because it does not appear from the record that Appellant has a history of vehicle accidents or engaging in high speed chases with law enforcement. Accordingly, because the trial court’s findings are unsupported by the record, the court erred in imposing a prison sentence rather than a nonstate prison sanction in accordance with section 775.082(10).
In sum, for the reasons stated above, we reverse Appellant’s sentence and remand for resentencing. On remand, the trial court shall sentence Appellant to a nonstate prison sanction as required by section 775.082(10). See Shull v. Dugger, 515 So.2d 748, 750 (Fla.1987) (holding in a case involving an upward departure under the sentencing guidelines that “a trial court may not enunciate new reasons for a departure sentence after the reasons given for the original departure sentence have been reversed by an appellate court”); but cf. Jackson v. State, 64 So.3d 90 (Fla.2011) (holding that a trial court may again impose a downward departure sentence under the Criminal Punishment Code on remand where the appellate court reverses the grounds for the initial departure).
REVERSED and REMANDED with directions.
WETHERELL and SWANSON, JJ., concur.
THOMAS, J., concurring in result only with opinion.

. Apprendi v. New Jersey, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000).

. Blakely v. Washington, 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004).

. We are satisfied that the first issue is preserved for appellate review in light of the argument presented below and the unique and tortured procedural history of the sentencing process in this case, which culminated in a perfunctory resentencing "hearing” at which the trial court simply imposed the same sentence it had initially imposed.

.Section 775.082(10) was enacted in 2009 as a part of a cost-savings measure for the Department of Corrections, and the legislative staff analysis characterized the statute as a "prison diversion approach” pursuant to which the trial court was required to “sentence certain non-violent low-scoring offenders to a non-state prison sanction unless the court finds that such a sentence could endanger the public." See Fla. Comm, on Ways & Means, Bill Analysis & Fiscal Impact Statement for CS/SB 1722, at 1 (Apr. 6, 2009) (on file with comm.). The staff analysis explained the rationale for the statute as follows:
Under current law a judge can sentence any third degree felon for up to five years in prison regardless of the total sentence score. In the last few years thousands of offenders whose sentence points are under the 44 point threshold recommended for a prison sanction have been sentenced to state prison. The absence of adequate diversionary programs and the overcrowding of jails have reportedly encouraged this trend of sending more low-level offenders to state prison.
According to [DOC], research has shown that diversionary programs which offer substance abuse treatment, vocational programming, employment and job training and intense supervision have reduced offender recidivism and reduced prison populations by implementing these programs. The goal of these programs is to improve public safety by reducing crime through providing non-violent offenders with the tools to function successfully in the community.
Id. at 3.

. See generally § 921.0016, Fla. Stat. (1995); Fla. R. Crim. P. 3.701, 3.988.

. This common understanding is consistent with the usage of the phrase in section 921.00241, which, like section 775.082(10), was enacted through chapter 2009-63, Laws of Florida. See § 921.00241(3), Fla. Stat. (using the phrase "nonstate prison sanction” to refer to a sentence imposed under subsection (2) of that statute, i.e., "a term of probation, community control, or community supervision with mandatory participation in a prison diversion program of the Department of Corrections if such program is funded and exists in the judicial circuit in which the offender is sentenced”).