NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING
MOTION AND, IF FILED, DETERMINED

IN THE DISTRICT COURT OF APPEAL

OF FLORIDA

SECOND DISTRICT


JAMES REED, )
         )
           Appellant, )
         )
v. )   Case No.  2D15-1458
         )
STATE OF FLORIDA, )
         )
           Appellee. )
_____ )

Opinion Issued May 27, 2016.

Appeal from the Circuit Court for Highlands
County; J. Dale Durrance, Judge.

Yohance Kefence McCoy, Esq., of Kefence,
P.A., Sebring, for Appellant.

Pamela Jo Bondi, Attorney General,
Tallahassee, and Elba Caridad Martin-
Schomaker, Assistant Attorney General,
Tampa, for Appellee.


BADALAMENTI, Judge.

A jury convicted James Reed on eleven counts of animal fighting and

baiting (a third-degree felony) and eleven counts of animal cruelty (a misdemeanor).

See §§ 828.12(1), .122(2)(a), Fla. Stat. (2011). The circuit court sentenced Reed to an

aggregate term of twenty-five years' imprisonment, to be followed by thirty years'

probation, because the court found that Reed posed a danger to the public.  See §

775.082(10) Fla. Stat. (2011).  After careful review and the benefit of oral argument, we

hold that the circuit court's findings were inadequate to sentence Reed to a state prison

sanction.  We thus reverse the sentence with instructions to impose a nonstate prison

sanction pursuant to section 775.082(10).  We affirm all of Reed's convictions without

comment.

## I.  FACTS AND PROCEDURAL BACKGROUND

On December 6, 2011, Reed was arrested by the Highlands County

Sherriff's Office (HCSO) for charges separate from those subject to this appeal.  At the

time of his arrest, Reed had $284 on his person.  On December 13, 2011, a sergeant

with the HCSO went to Reed's residence to serve Reed with a notice of seizure for the

$284.  While having a conversation with Reed in his driveway, the sergeant noticed

several dogs chained to the ground in Reed's backyard.  The sergeant returned to his

office and notified his superiors of his observations.  The next day, a crime scene

technician took photographs of Reed's backyard from an adjacent property.  The

photographs confirmed the sergeant's observations that there were several dogs in

Reed's backyard tethered with large chains.  Based on this evidence, HCSO executed a

warrant to search Reed's residence.

Police found twenty-nine pit bulls on Reed's property.  Many of the dogs

had injuries and scarring consistent with dog fighting and were collared with large

"logging-type" chains attached to cinder blocks buried in the ground.  Police found

lineage papers for the dogs in Reed's home, which revealed that many of the dogs

came from lineages bred for fighting.  Police also found blood supplements meant for

- 2 -

horses. Reed had no horses on his property, which suggested that the supplements were intended for the dogs.

Reed was ultimately charged with eleven counts of animal cruelty and eleven additional counts of animal fighting or baiting. Reed's jury trial commenced on December 8, 2014. After the State rested its case-in-chief, Reed moved for judgments of acquittal, arguing that the State presented only circumstantial evidence which was not inconsistent with Reed's theory of events. Specifically, Reed's theory was that he trained show dogs, not fighting dogs. The circuit court denied the motion. On December 10, 2014, the jury found Reed guilty as charged on all twenty-two counts.

Reed faced an aggregate statutory maximum sentence of fifty-five years in prison for the felonies and eleven years in jail for the misdemeanors. However, Reed scored 13.9 points on his sentencing scoresheet. Because Reed accumulated "22 points or fewer" and animal baiting is a third-degree felony, Reed was presumptively entitled to a sentence that did not include a prison sanction unless the sentencing judge found him to be a danger to the public. See § 775.082(10). At the sentencing hearing, Reed argued that the circuit court could not give him a state prison sentence pursuant to section 775.082(10) because he was not a "danger to the public." But the circuit judge made an oral ruling that Reed was indeed a danger to the public. As a result, the circuit court sentenced Reed to twenty-five years in prison, followed by thirty years of probation, rather than to a nonstate prison sanction.

Reed subsequently filed a motion to correct sentencing error, arguing in pertinent part that: (1) the circuit court's determination that Reed was a danger to the public was unsupported by the record and; (2) the circuit court deprived Reed of his

- 3 -

right to a jury trial by finding that Reed was a danger to the public, thus circumventing the statutory maximum sentence in section 775.082(10) and disregarding Apprendi v. New Jersey, 530 U.S. 466, 490 (2000). After hearing argument on Reed's motion, the court corrected Reed's sentence on grounds immaterial to the issues presently on appeal but rejected his other arguments. Reed's terms of imprisonment and probation remained the same.[1] That same day, the court issued an Order Finding Defendant a Danger to the Public (the Public Danger Order), which memorialized, in writing, the court's prior finding of public danger. The Public Danger Order listed the following findings of fact in support of the circuit court's determination of public dangerousness:

> (1) The dogs [found in Reed's home] were kept in horrible conditions.
>
> (2) The dogs were tethered with heavy chains, blocks and anchors.
>
> (3) The dogs were confined in very small areas.
>
> (4) The Defendant had paperwork showing the bloodline of the dogs came from fighting dogs.
>
> (5) Expert testimony proved the aggressive nature of the dogs towards other animals and people.
>
> (6) All eleven dogs had numerous injuries from neglect, abuse and fighting.
>
> (7) The evidence is clear that the Defendant is a professional dog raiser and dog fighter.

---

[1]The sole argument from Reed's motion to correct sentence accepted by the court was that counts one through eleven (cruelty to an animal) were misdemeanors. It was therefore inappropriate to assign these counts punishments exceeding one year. The court corrected Reed's sentence on those counts to one-year terms of probation and incarceration. But because the sentences on those counts were identical with the concurrent sentences on counts twelve through twenty-two (animal fighting and baiting), this correction did not change Reed's overall twenty-five-year term of imprisonment.

As such, the Court finds that the Defendant poses a danger to society and the community by breeding and training dangerous, aggressive dogs. The Defendant's behavior is a danger to other animals, children and adults. Therefore, it is necessary and appropriate that the Defendant be sentenced to a State Correctional Facility.

Reed now appeals, arguing that: (1) the circuit court erred in denying his motion for judgments of acquittal; (2) section 775.082(10) violates Apprendi; and (3) the record in this case, as articulated in the Public Danger Order, does not support a finding that Reed is a danger to the public.  We agree that the Public Danger Order does not adequately establish Reed as a danger to the public.  We affirm the denial of Reed's motion for judgments of acquittal without comment.  We need not reach Reed's constitutional arguments concerning Apprendi.[2]

## II.  ANALYSIS

### A.  The Text of Section 775.082(10)

In 2009, the legislature enacted section 775.082(10), which directs that courts must sentence a certain class of felony offenders to a "nonstate prison sanction."  Ch. 2009-63, § 1, at 2, Laws of Fla.  Although section 775.082(10) does not define "nonstate prison sanction," the phrase is "understood to mean probation, community control, or imprisonment in the county jail for up to one year."  Jones v. State, 71 So. 3d 173, 175 (Fla. 1st DCA 2011); see also § 921.00241(1)-(2), Fla. Stat. (2011) (using the

---

[2]This is not the first time Apprendi concerns have arisen in relation to section 775.082(10).  However, no court in Florida has yet reached the issue.  See Murphy v. State, 161 So. 3d 1282, 1284 (Fla. 1st DCA 2015); Murray v. State, 133 So. 3d 557, 558-59 (Fla. 1st DCA 2014); Sprott v. State, 99 So. 3d 634, 635 (Fla. 1st DCA 2012); Jones v. State, 71 So. 3d 173, 174 (Fla. 1st DCA 2011).  But see Jones, 71 So. 3d at 176-79 (Thomas, J., concurring in result only) (arguing that section 775.082(10) is unconstitutional under Apprendi).

- 5 -

phrase "nonstate prison sanction" to refer to "a term of probation, community control, or community supervision with mandatory participation in a prison diversion program of the Department of Corrections if such program is funded and exists in the judicial circuit in which the offender is sentenced").  Our sister courts of appeal have noted that the purpose of section 775.082(10) is "to keep certain offenders out of the state prison system."  Jones, 71 So. 3d at 175; see also Porter v. State, 110 So. 3d 962, 963 (Fla. 4th DCA 2013), dismissed as moot, 137 So. 3d 1021 (Fla. 2014) ("[D]ue to an ever-increasing prison population, the cost of prison building and operation, and the downturn in the economy, the Florida Legislature enacted section 775.082(10).  This was an effort to stem the tide of prison commitments." (citing Jones, 71 So. 3d at 175 n.4)).

Section 775.082(10) reads:

If a defendant is sentenced for an offense committed on or after July 1, 2009, which is a third degree felony but not a forcible felony as defined in s. 776.08, and excluding any third degree felony violation under chapter 810, and if the total sentence points pursuant to s. 921.0024 are 22 points or fewer, the court must sentence the offender to a nonstate prison sanction.  However, if the court makes written findings that a nonstate prison sanction could present a danger to the public, the court may sentence the offender to a state correctional facility pursuant to this section.

Thus, in order to be eligible for the presumptive nonstate prison sanction in section 775.082(10), an offender must satisfy three conditions: (1) the offender must be sentenced for a third-degree felony, (2) the offense must be committed on or after July 1, 2009, and (3) the offender must score "22 points or fewer" as determined by the Criminal Punishment Code's (CPC) scoresheet.

- 6 -

The plain language of section 775.082(10) carves out two subclasses of offenders who <u>cannot</u> qualify for a less severe "nonstate prison sanction," despite otherwise meeting the three aforementioned conditions. The first subclass consists of offenders convicted of "forcible felonies," as defined in section 776.08, Florida Statutes (2011). Section 776.08 lists as "forcible felonies" treason, murder, manslaughter, sexual battery, arson, burglary, aggravated battery, aggravated assault, carjacking, aggravated stalking, and aggravated assault, to name several. Section 776.08 then provides a catchall "forcible felony" provision to include "any other felony which involves the use or threat of physical force or violence against any individual." The second subclass of felony offenders precluded from receiving a nonstate prison sanction under section 775.082(10) are those convicted of a third-degree felony in chapter 810, Florida Statutes. Chapter 810 primarily criminalizes various forms of burglary and trespass.

If an offender who is eligible for a nonstate prison sanction does not fit into one of these two enumerated subclasses, section 775.082(10) prescribes one more means under which a harsher sentence may be legally imposed: The court may make a written finding that "a nonstate prison sanction could present a danger to the public."

## B. The Concept of Public Danger

Prior to section 775.082(10)'s passage, a court's upward departure based on an offender's danger to the public alone was impermissible. <u>See</u> <u>Keys v. State</u>, 500 So. 2d 134, 136 (Fla. 1986); <u>see also</u> <u>Ready v. State</u>, 657 So. 2d 53, 53 (Fla. 2d DCA 1995); <u>Reid v. State</u>, 488 So. 2d 913, 915 (Fla. 2d DCA 1986); <u>Angle v. State</u>, 604 So. 2d 34, 35 (Fla. 1st DCA 1992); <u>Odom v. State</u>, 561 So. 2d 443, 445 (Fla. 5th DCA 1990); <u>Morgan v. State</u>, 528 So. 2d 991, 992 (Fla. 4th DCA 1988); <u>Mendenhall v. State</u>,

511 So. 2d 342, 342 (Fla. 5th DCA 1987). The reasoning behind this line of cases was that no adequate litmus test existed for assessing public dangerousness. Predicting whether a defendant would commit future crimes was too speculative. See Keys, 500 So. 2d at 136; Lindsey v. State, 453 So. 2d 485, 486 (Fla. 2d DCA 1984); Davis v. State, 458 So. 2d 42, 44 (Fla. 4th DCA 1984), approved, 477 So. 2d 565 (Fla. 1985). Factors like victim injury and criminal history were also unusable because they were already calculated into a defendant's sentence. See Hall v. State, 517 So. 2d 692, 694 (Fla. 1988); Hendrix v. State, 475 So. 2d 1218, 1220 (Fla. 1985); Cortez v. State, 497 So. 2d 671, 672 (Fla. 2d DCA 1986). Moreover, as the supreme court pointed out in Keys, all criminally punishable conduct is "presumed to be dangerous to the community" to some degree. 500 So. 2d. at 136.

The text of section 775.082(10) indicates that the legislature intended to change course. Cf. Wood v. Fraser, 677 So. 2d 15, 18 (Fla. 2d DCA 1996) (explaining that a legislature is presumed to adopt prior judicial constructions of a reenacted statute, but not if the legislature makes a clear expression to the contrary). When compelled to consider the propriety of an upward departure from a nonstate prison sanction based on section 775.082(10), courts have looked to precisely those factors which they were previously loath to consider—criminal history, victim injury, and propensity for one to commit future crimes. See Porter, 110 So. 3d at 964 (affirming an upward departure based on section 775.082(10) due to victim injury and criminal history); McCloud v. State, 55 So. 3d 643, 645 (Fla. 5th DCA 2011) (affirming an upward departure based on section 775.082(10), where defendant was a "habitual thief" who "presents a threat to

- 8 -

property").  Legislative authority to depart upward due to public danger, however, does not mandate that we ignore Florida's prior case law pertaining to upward departures.

As this court recently explained, Florida's former sentencing structure may inform current courts of procedures that may be important in imposing a sentence under section 775.082(10).  See Rodriguez-Aguilar v. State, 41 Fla. L. Weekly D646, D646-47 (Fla. 2d DCA Mar. 9, 2016).  This is not a controversial proposition.  It makes sense that the legislature's resurrection of a sentencing mechanism may also require the resurrection of certain accompanying legal principles to help manage that mechanism.  See Bryant v. State, 148 So. 3d 1251, 1258 (Fla. 2014) (describing section 775.082(10) as a reinstatement of upward departure sentencing, which the CPC had previously eliminated).  One such accompanying principle is that "[a] court cannot use an inherent component of the crime in question to justify departure."  State v. Mischler, 488 So. 2d 523, 525 (Fla. 1986), superseded by statute on other grounds, as recognized in Banks v. State, 732 So. 2d 1065, 1068 n.8 (Fla. 1999).  We are persuaded that the same principle must apply to findings of public danger under section 775.082(10).  That is, a sentencing court's finding of an offender's danger to the public must be more than the recitation of acts that are inherent to the crimes for which the defendant was convicted.

## C.  The Finding of Public Danger in the Present Case

At first glance, the circuit court's Public Danger Order sets forth multiple reasons to justify its upward departure from a presumptive nonstate prison sanction to an aggregate term of twenty-five years' imprisonment.  But all of the court's findings are essentially alternate ways of saying that Reed was a professional dogfighter.  In fact, the lone sentence set forth in paragraph seven of the Public Danger Order effectively

summarizes everything else in the order: "The evidence is clear that the Defendant is a professional dog raiser and dog fighter."

It is true that Reed's dogs were kept in horrible conditions, were aggressive to other dogs,[3] and had injuries likely suffered from dogfighting. But the circuit court's repetition of these facts is essentially a rehash of the elements necessary to convict Reed in the first place. See §§ 828.12(1) (providing that an offender is guilty of misdemeanor cruelty to animals when the offender "unnecessarily overloads, overdrives, torments, deprives of necessary sustenance or shelter, or unnecessarily mutilates, or kills any animal, or causes the same to be done, or carries in or upon any vehicle, or otherwise, any animal in a cruel or inhumane manner"), .122(1)(b) (defining animal baiting as "to attack with violence, to provoke, or to harass an animal with one or more animals for the purpose of training an animal for, or to cause an animal to engage in, fights with or among other animals"). Because the Public Danger Order merely "recite[s] the charges against the appellant and some details surrounding them," it does not "establish a nexus between a nonstate prison sanction and a danger to the public." Ryerson v. State, 41 Fla. L. Weekly D980, D980 (Fla. 4th DCA Apr. 20, 2016). Although Reed's treatment of animals is deplorable and certainly should be punished, the circuit court's written findings under section 775.082(10) fail to connect how imposition of a nonstate prison sanction could create a danger to the community. See id.; Jones, 71 So. 3d at 176 (holding that the sentencing court failed to show how a

[3]Paragraph six of the Danger Order states, "Expert testimony proved the aggressive nature of the dogs towards other animals and people." This is slightly inaccurate. Expert testimony established that Reed's pit bulls were only aggressive toward other dogs, not humans. The record also demonstrates, however, that the pit bulls could be dangerous to humans when other dogs were in the immediate vicinity.

nonstate prison sanction would be a greater or lesser deterrent to defendant's unlicensed driving).

Case law on section 775.082(10) is not plentiful, but two decisions of our sister courts of appeal offer guidance as to how a sentencing court may properly articulate a nexus between a nonstate prison sanction and public danger. In Porter, the Fourth District upheld a circuit court's upward departure to the sentence of an offender who was otherwise eligible for a nonstate prison sanction under section 775.082(10). 110 So. 3d at 964. In its written findings, the circuit court in Porter found that the defendant had "engaged in financial fraud his entire adult life" and caused a "significant" degree of "financial and emotional damage," with "[p]rior sentences hav[ing] had no effect on deterring the defendant from committing financial crimes." Id. The circuit court further found that "a county jail sentence does not suffice as the appropriate punishment in this case," where "no reasonable person could conclude that the defendant will not continue committing financial crimes whenever he is released from prison." Id. In McCloud, the Fifth District upheld a nonstate prison sanction for an offender whom the sentencing court found to be a "habitual thief" with "twenty misdemeanor and five felony convictions" and who had already served "two separate eighteen-month prison terms." 55 So. 3d at 644. The circuit court found that the defendant was such a well-known thief that "when he was seen in a neighborhood, additional police resources were deployed to his location." Id. The circuit court further explained that such an extreme diversion of police resources "diminish[ed] police protection in other parts of the community." Id. at 645.

- 11 -

The circuit courts' findings in <u>Porter</u> and <u>McCloud</u> specified reasons why a nonstate prison sanction for those offenders could result in a danger to the public. Those sentencing courts linked the danger the offenders could present to the public if sentenced to nonstate prison sanctions. In this light, the Public Danger Order is insufficient. The circuit court never developed the nexus between Reed's sentence to a nonstate prison sanction and the resulting danger Reed, a "professional dog raiser and dog fighter," could then present to the public. To suggest otherwise is to propose that every professional dogfighter must serve a state prison sentence, which is clearly in contravention of the diversionary intent behind section 775.082(10). If the legislature intended for section 775.082(10) to function in such a manner, it would have specifically excluded animal baiting from its presumption of nonstate prison sentencing, just as it specifically excluded forcible felonies defined in section 776.08 and third-degree felonies under chapter 810. Alternatively, the legislature could have classified animal baiting as a higher degree of felony.

Given the dearth of authority, the factors analyzed in <u>Porter</u> and <u>McCloud</u> (criminal history, victim injury, and propensity to commit future crimes) are not necessarily exhaustive. But they are nevertheless informative to our holding in this case: A court's decision to impose an upward departure under section 775.082(10) must do more than just describe the defendant's criminal conduct. The circuit court must make findings to establish a nexus between sentencing an offender to a nonstate prison sanction and the resulting danger that nonstate prison sanction could present the public. <u>Ryerson</u>, 41 Fla. L. Weekly at D980. The court did not do so here. Although we

are appalled by Reed's treatment of dogs here, we are compelled to reverse based on the directive set forth by the legislature in section 775.082(10).

### III. CONCLUSION

The circuit court erred when it sentenced Reed without making adequate findings that Reed's sentence to a nonstate prison sanction could have presented a danger to the public, as required by section 775.082(10).  We thus reverse Reed's sentence and remand to the circuit court with instructions that Reed be resentenced to a nonstate prison sanction.  See Jones, 71 So. 3d at 176 (citing Shull v. Dugger, 515 So. 2d 748, 750 (Fla. 1987)) (requiring imposition of nonprison sanction on remand where reasons for upward departure were insufficient); see also Bryant, 148 So. 3d at 1258 (citing Pope v. State, 561 So. 2d 554, 556 (Fla. 1990)) (equating a failure to provide a valid reason for departure with a failure to provide any reason at all).  We affirm all of Reed's convictions.

Affirmed in part, reversed in part, and remanded for proceedings consistent with this opinion.


CASANUEVA and LUCAS, JJ., Concur.