# FIRST DISTRICT COURT OF APPEAL
## STATE OF FLORIDA

_____

No. 1D17-4743

_____

TYRONE RANDY JOHNSON JR.,

Appellant,

v.

STATE OF FLORIDA,

Appellee.

_____

On appeal from the Circuit Court for Alachua County.
James M. Colaw, Judge.

December 10, 2018

PER CURIAM.

Appellant, Tyrone Randy Johnson, Jr., appeals his sentence and argues that the trial court erred in denying his motion to correct a sentencing error filed pursuant to Florida Rule of Criminal Procedure 3.800(b)(2) because its finding that he posed a danger to the public warranting an enhanced sentence under section 775.082(10), Florida Statutes (2017), was insufficient and not supported by the record. For the following reasons, we agree and, therefore, reverse and remand for resentencing.

In October 2016, Appellant was convicted of acting as a bail bond agent with a suspended or revoked license, theft, and grand theft of a motor vehicle. The trial court sentenced Appellant on the bail bond and grand theft offenses to concurrent terms of

fourteen months' imprisonment in the Department of Corrections to be followed by forty-two months' probation and to time served on the theft offense. On direct appeal, we vacated Appellant's convictions for "grand theft auto and theft of property," affirmed the conviction on the bail bond offense, and ordered that Appellant be resentenced accordingly. *Johnson v. State*, 228 So. 3d 1164, 1168 (Fla. 1st DCA 2017).

On resentencing, Appellant scored a total of 4.6 points for the bail bond offense on his criminal punishment code scoresheet. The scoresheet read in part, "If total sentence points are less than or equal to 44, the lowest permissible sentence is any non-state prison sanction. If the total sentence points are 22 points or less, see Section 775.082(10), Florida Statutes, to determine if the court must sentence the offender to a non-state prison sanction." During the resentencing hearing, the State requested "the previous sentence in the same way." Defense counsel requested that the trial court sentence Appellant to "county jail as he now scores 4.6 points; and, therefore, would be presumed to get a non-prison sanction." Defense counsel explained, "He has served 383 days as of today's date, so the Court could not even sentence him to the time served that he has under the current scoresheet." The trial court stated:

> I'm going to adjudicate you guilty of the offense of acting as a bail bond agent with a suspended or revoked license. I'm going to sentence you to 383 days incarceration, give you credit for the 383 days you have time served. So your incarcerative sentence is completed as of today. . . .
> That'll be followed by the 42 months of supervised probation. . . .

Defense counsel requested clarification "because 383 days would be a Department of Corrections sentence and not a County Jail sentence." When asked if it was sentencing appellant to the Department of Corrections, the court replied, "I'm sentencing him to 383 days, and giving him credit for that amount that he's already served; that's correct." When asked if that would count as a "Department of Corrections release for the purposes of PRR [prison releasee reoffender sentencing for any future offenses],"

the court replied, "It would." After defense counsel objected under section 775.082(10) "that he scores less than 22 points and cannot be sentenced to the Department of Corrections as he stands at resentencing," the court stated, "For all the reasons that have been previously articulated by the Court, both at the previous hearing on your Motion for Pretrial Release, it's for all those reasons that I do find that any other sentence other than what the Court has imposed would represent a risk to the community . . . ."[1]

In its subsequent Order Making Written Findings that a Nonstate Prison Sanction Would be a Danger to the Public, the trial court set forth in part:

Here, a non-state prison sanction for defendant could present a danger to the public. First, as the record reflects, the defendant had his bond license revoked in 2012. Nonetheless, he continued to act as, and was convicted of, Acting as a Bail Bond Agent With a Revoked License. The defendant was out on bond during the pendency of this case pre-trial. He was routinely late for court appearances. On September 7, 2016, the defendant signed a notice to appear in court on September 19, 2016 at 9:00 a.m. Defendant failed to appear in court on September 19, 2016 at 9:00 a.m. and the court issued a capias for his arrest. He did ultimately appear at approximately 11:15 a.m. and was taken into custody at that time. Additionally, prior to sentencing, the defendant and his attorney requested that a Pre-Sentence Investigation (PSI) report be completed. That report was completed on November 10, 2016 and was considered by the court at the time of the defendant's sentencing. The PSI indicated that the defendant and/or his mother had largely refused to cooperate with the investigation that he and his attorney had requested. As

_____

[1] During the prior hearing on Appellant's motion for pretrial release, the trial court found that Appellant was a flight risk, he had established a track record of not complying with orders, he lost his license as a bail bondsman due to his prior criminal offenses, and he did not have a significant support system.

3

a result, much of the information obtained could not be verified or corroborated. The PSI made reference to the defendant behaving in a paranoid fashion. The PSI also outlined defendant's prior probation sentence that he received in case 2011-CF-3029-A. In that case, the defendant was alleged to have violated his probation on multiple occasions including multiple violations for illegal drug use. The PSI had recommended a sentence of one (1) year in jail followed by probation. When viewing this case, and Defendant's history, a reasonable person cannot conclude that he will not continue to commit crimes whenever he is released from incarceration. Furthermore, prior county jail sentences have had no effect on deterring Defendant from committing additional offenses. The criminal justice system has failed to protect the public from the defendant's criminal conduct. It is unclear whether the defendant has the ability to stop his criminal behavior. It is clear to this Court that he could present a danger to the public and that a county jail sentence does not suffice as the appropriate punishment for him.

Pursuant to the written judgment, Appellant was "hereby committed to the custody of the Department of Corrections."

During the pendency of his appeal, Appellant moved to correct what he claimed was an illegal sentence based upon the trial court's enhancement. The trial court denied the motion without comment. This appeal followed.

The State argues, and the dissent agrees, that the issue in this appeal is moot given that Appellant has already served the entirety of his sentence. In *Miller v. State*, 79 So. 3d 209, 209 (Fla. 1st DCA 2012), we dismissed the appeal because the appellant, who appealed the order revoking his probation and the sentence of five years' imprisonment, had already served his sentence, which made the appeal moot. Similarly, in *Jones v. State*, 239 So. 3d 1294, 1294 (Fla. 1st DCA 2018), we dismissed an appeal after noting that the appellant appealed her sentence and argued only that the trial court considered improper factors when imposing an eight-month jail sentence and setting forth, "But because she has

4

not challenged her conviction – only her sentence – and because she has already served that sentence, this appeal has become moot." Importantly, for purposes of this appeal, we noted that although the appellant in *Jones* asserted that the appeal was not moot because a possibility existed that adverse collateral legal consequences would befall the appellant, the appellant had not articulated what those consequences might be, and we could conceive of none. *Id.* Here, in contrast, adverse legal consequences could befall Appellant as a result of his sentence.

As Appellant argues, there is a conflict among Florida's appellate courts as to whether county jail time triggers PRR status. In *State v. Wright*, 180 So. 3d 1043, 1044 (Fla. 1st DCA 2015), we found the Fifth District's reasoning in *Louzon v. State*, 78 So. 3d 678 (Fla. 5th DCA 2012), and the Fourth District's reasoning in *Taylor v. State*, 114 So. 3d 355 (Fla. 4th DCA 2013), persuasive in holding that the appellant, who was committed to the custody of the Department of Corrections and whose release facility was listed as the Department's central office, should be considered a PRR notwithstanding that he was sentenced to time served and physically walked out of a county jail. In *Lewars, DOC #Y44737 v. State*, No. 2D15-3471, 2017 WL 1969691, at *2 (Fla. 2d DCA May 12, 2017), the Second District held that the appellant, who was sentenced to two terms of twenty-four months' imprisonment and awarded 766 days' jail credit and, thus, walked out of the jail a free man instead of being transported to a Department of Corrections' facility, did not qualify as a PRR given that a PRR is defined as a defendant who has committed an enumerated offense "within 3 years after being released from a state correctional facility operated by the Department of Corrections." The Second District certified conflict with *Wright*, *Taylor*, and *Louzon*. *Id.* at *6. The Florida Supreme Court accepted jurisdiction in September 2017. *See State v. Lewars*, No. SC17-1002, 2017 WL 4022360, at *1 (Fla. Sept. 13, 2017).

The State contends that the conflict in the appellate courts will have no effect on Appellant since he served his term of incarceration not in a county jail but in the Department of Corrections. As Appellant argues, however, "[t]he entire point of his appeal is that because on resentencing the trial court imposed an illegal sentence, i.e., 383 days rather than 364 days, or a prison

5

sentence rather than a jail sentence, [he] will be illegally subject in the future to [PRR] classification." Indeed, when asked if the 383 days "Department of Corrections sentence" "would count then as a Department of Corrections release for the purposes of PRR," the trial court replied, "It would." The State does not explain how Appellant could have been subject to PRR sentencing in the future had the trial court committed him "to the custody of the Alachua County Sheriff's Office, Department of the Jail," which was an option on the scoresheet. Given such, we do not believe that Appellant's challenge to the trial court's findings is moot.

Turning to the merits of this appeal, section 775.082(10), Florida Statutes (2017), provides:

> If a defendant is sentenced for an offense committed on or after July 1, 2009, which is a third degree felony but not a forcible felony as defined in s. 776.08, and excluding any third degree felony violation under chapter 810, and if the total sentence points pursuant to s. 921.0024 are 22 points or fewer, the court must sentence the offender to a nonstate prison sanction. However, if the court makes written findings that a nonstate prison sanction could present a danger to the public, the court may sentence the offender to a state correctional facility pursuant to this section.

The legality of a sentence presents a question of law reviewable de novo. *Washington v. State*, 199 So. 3d 1110, 1111 (Fla. 1st DCA 2016).

Appellant argues on appeal that the trial court erred in denying his rule 3.800(b)(2) motion because the court's finding that he posed a danger to the public if not incarcerated was not supported by the record.[2] A trial court's findings of dangerousness

---

[2] Notably, Appellant did not argue the constitutionality of section 775.082(10) either below or on appeal. *See Hughbanks v. State*, 190 So. 3d 1122, 1123 (Fla. 2d DCA 2016) ("In order to properly preserve an as-applied constitutional challenge for appeal, a defendant must timely raise the issue for the trial court's consideration."); *Lamore v. State*, 983 So. 2d 665, 668 (Fla. 5th

pursuant to section 775.082(10) must be in writing and must be supported by the record; speculative findings are insufficient. *Jones v. State*, 71 So. 3d 173, 175-76 (Fla. 1st DCA 2011). In considering an upward departure pursuant to section 775.082(10), courts have looked to factors such as criminal history, victim injury, and propensity to commit future crimes. *Reed v. State*, 192 So. 3d 641, 646 (Fla. 2d DCA 2016). In finding an offender to be a danger to the public, the trial court must do more than merely recite acts inherent in the crimes of conviction and "must make findings to establish a nexus between sentencing an offender to a nonstate prison sanction and the resulting danger that nonstate prison sanction could present the public." *Id.* "[A] danger to the public does not require a history of violence and can be based on economic or other types of harm." *Jones*, 71 So. 3d at 176.

In *Jones*, the appellant was sentenced to three years in prison for driving while his license was cancelled, suspended, or revoked upon the trial court finding that a non-state prison sentence would present a danger to the public. *Id.* at 174. The trial court found that the appellant had evinced an unwillingness to discontinue driving without a driver's license despite repeated punishment, driving without a license endangers the public, the appellant's insistence on driving without a license required that he drove without insurance, and his unavailability to drive due to incarceration in state prison was the only method open to the court for the protection of the public. *Id.* In remanding for a non-state prison sanction, we agreed with the appellant that the trial court's findings were not supported by the record and explained:

> Although Appellant's history of driving without a license arguably supports the trial court's finding that he will continue to do so, the court did not make sufficient

_____

DCA 2008) (noting that a "constitutional application of a statute to a particular set of facts" must be raised at the trial level); *see also Booker v. State*, 244 So. 3d 1151, 1156 (Fla. 1st DCA 2018) (holding that the last sentence of section 775.082(10), which allowed the trial court to sentence the appellant to prison rather than a non-state prison sanction based upon its finding that he posed a danger to the public, was unconstitutional as applied to the appellant).

findings and the record does not suggest that imprisonment within the state prison system rather than the county jail would better deter him from continued unlicensed driving. Nor is there any record support for the court's implicit finding that one year of incarceration in the county jail would constitute a significantly lesser deterrent for Appellant than three years in state prison. The trial court's additional findings are speculative at best because it does not appear from the record that Appellant has a history of vehicle accidents or engaging in high speed chases with law enforcement.

*Id.* at 176.

In *Reed*, the appellant was convicted of eleven counts of animal fighting and baiting and eleven counts of animal cruelty and was sentenced to twenty-five years' imprisonment upon the trial court's finding that he posed a danger to the public. 192 So. 3d at 642-43. The trial court based its determination of dangerousness on the findings that the dogs found in the appellant's home were kept in horrible conditions, the dogs were tethered with heavy chains, blocks, and anchors, the dogs were confined in very small areas, paperwork showed that the bloodline of the dogs came from fighting dogs, expert testimony proved the aggressive nature of the dogs towards other animals and people, and the evidence was clear that the appellant was a professional dog raiser and dog fighter. *Id.* at 644. The Second District reversed the appellant's prison sentence upon concluding that the trial court's written findings merely recited the charges against him and some attendant details and failed to develop a nexus between a non-state prison sanction and the resulting danger he could present to the public. *Id.* at 647.

Subsequently, in *Johnson v. State*, 219 So. 3d 167, 169 (Fla. 1st DCA 2017), we relied on *Jones* and *Reed* in vacating the appellant's upward departure prison sentence pursuant to section 775.082(10). There, the appellant was convicted of fleeing or attempting to elude a law enforcement officer, but was acquitted of aggravated battery on the same officer. *Id.* In finding that the appellant was a danger to the public and in imposing a prison sentence, the trial court found that the appellant was released on

8

bond for another charge at the time he committed the offense in the case, the appellant was being taken into custody for failing to appear in court at the time he committed the offense at issue, the appellant represented a specific danger to a certain officer, the appellant represented a danger to other traffic; while the appellant was released on bond in the current case, he violated probation in a separate offense and pled to an independent new law offense, and the appellant was currently serving an independent prison sentence for a violation of probation. *Id.* at 169. We concluded that "none of the six grounds stated by the trial court explain how a non-state prison sanction, such as jail, could present a danger to the community, as required by the plain meaning of the statute as well as by subsequent case law," and we felt constrained to reverse "[g]iven the lack of a 'nexus.'" *Id.*

In this case, the trial court found that a non-state prison sanction could present a danger to the public because: (1) Appellant continued to act as a bail bond agent after he had his license revoked in 2012; (2) he was late for court appearances; (3) he failed to appear on September 19, 2016; (4) his PSI report indicated that he and/or his mother had largely refused to cooperate with "the investigation that he and his attorney had requested;" (5) the PSI made reference to Appellant behaving in a paranoid fashion; and (6) the PSI outlined Appellant's prior probation sentence and noted that he was alleged to have violated his probation on multiple occasions including multiple violation for illegal drug use. The trial court determined that a reasonable person could not conclude that Appellant would not continue to commit crimes whenever he is released from incarceration and that any prior county jail sentence had no effect on deterring Appellant from committing additional offenses.

As Appellant contends, the trial court impermissibly relied, at least in part, upon the crime at issue when it noted that Appellant continued to act as a bail bond agent after he had his license revoked. As Appellant also argues, there is no established connection between him appearing late for court and his danger to the public. The same could be said of Appellant's failure to appear and failure to cooperate with an investigation. As for the trial court's reliance upon the fact that Appellant, in a separate case, was alleged to have violated his probation on multiple occasions,

including multiple violations for illegal drug use, the State argues that the "prior VOPs were relevant insofar as they pertained to Appellant's amenability to probation." However, whether or not that is true does not change the fact that, like the situation in *Jones*, there is no record support for the court's implicit finding that one year of incarceration in the county jail, or 364 days as requested by the defense, would constitute a significantly lesser deterrent for Appellant than the 383 days the trial court imposed. Stated differently, the trial court, like the court in *Reed*, failed to develop a nexus between a non-state prison sanction and the resulting danger Appellant could present to the public. Like the situation in *Johnson* where we found that none of the six grounds stated by the trial court explained how a non-state prison sanction, such as jail, could present a danger to the community, none of the trial court's findings in this case explained how sentencing Appellant to a year or less in jail could present a danger to the community, especially given the fact that Appellant was awarded time served for the entirety of his 383-day sentence.

The State argues on appeal that this case is more appropriately compared to *Porter v. State*, 110 So. 3d 962, 963 (Fla. 4th DCA 2013), where the Fourth District affirmed a sentence enhancement under section 775.082(10). There, the trial court, after noting that the appellant was convicted by a jury for grand theft, found that the theft, consistent with the appellant's life-long modus operandi, was accomplished by means of writing a worthless check, the appellant, who was in his mid-sixties, had engaged in financial fraud his entire adult life, the financial and emotional damage in the case was significant, prior sentences had no effect on deterring the appellant from committing financial crimes, the criminal justice system had continuously failed to protect the public from the appellant's financial conduct, the public was entitled to be secure in its financial dealings, the appellant was a danger to the public in the past, was presently a danger to the public, and would be a danger to the public in the future when not incarcerated. *Id.* at 964.

*Porter* is distinguishable from this case. Not appearing for court or participating in investigations is far different from spending one's entire adult life engaging in a crime like financial fraud. Moreover, there is no evidence in this case that Appellant

had a history of acting as an unlicensed bail bond agent, aside from the crime for which he was convicted.

Accordingly, because the trial court erred in imposing an enhanced sentence in this case, we reverse Appellant's sentence and remand for resentencing. On remand, the trial court must impose a non-state prison sanction. *See Johnson*, 219 So. 3d at 170 (remanding for imposition of a non-state prison sanction and noting that the trial court was not permitted to articulate new reasons for a departure sentence); *Jones*, 71 So. 3d at 176 (same).

REVERSED and REMANDED for resentencing.

WOLF and LEWIS, JJ., concur; ROWE, J., dissents with opinion.

_____

***Not final until disposition of any timely and authorized motion under Fla. R. App. P. 9.330 or 9.331.***

_____

ROWE, J., dissenting.

I dissent from the majority's decision to reverse and remand for resentencing in this case. I would dismiss the appeal as moot. Johnson was sentenced to 383 days and given credit for the 383 days he had already served in a Department of Corrections' facility. Johnson argues that his appeal is not moot because his sentence should never have been imposed. However, it is the decision in *Booker v. State*, 244 So. 3d 1151, 1156 (Fla. 1st DCA 2018), which prevented the imposition of his sentence, and he does not raise this as a reason for reversal on appeal. Because he is not challenging his conviction and has served his sentence, Johnson's challenge to the propriety of the trial court's sentencing decision has become moot. *See Jones v. State*, 239 So. 3d 1294, 1294 (Fla. 1st DCA 2018) (dismissing an appeal that challenged the defendant's sentence, not her conviction, because the defendant had already served her sentence); *Miller v. State*, 79 So. 3d 209, 211 (Fla. 1st DCA 2012) (dismissing an appeal of an order revoking probation and sentencing the defendant to five years'

imprisonment because the defendant had already served his sentence).

_____

Andy Thomas, Public Defender, M. J. Lord, Assistant Public Defender, Tallahassee, for Appellant.

Pamela Jo Bondi, Attorney General, Steven E. Woods, Assistant Attorney General, Tallahassee, for Appellee.