# Supreme Court of Florida

_____

No. SC19-1622
_____

**JUAN C. CASIANO,**
Petitioner,

vs.

**STATE OF FLORIDA,**
Respondent.

January 28, 2021

LAWSON, J.

We accepted review of *Casiano v. State*, 280 So. 3d 105 (Fla. 4th DCA 2019), on the grounds that the decision of the Fourth District Court of Appeal in *Casiano* expressly and directly conflicts with that of the First District Court of Appeal in *Johnson v. State*, 260 So. 3d 502 (Fla. 1st DCA 2018), on the issue of whether a defendant's completion of sentence during the pendency of his appeal renders moot his challenge to a state prison sentence erroneously imposed pursuant to a trial court's dangerousness finding under section 775.082(10), Florida Statutes

(2019) (subsection (10)).[1] Because the district courts reached separate conclusions as to whether a defendant's potential designation as a prison releasee reoffender under section 775.082(9)(a)1.[2] is a sufficient collateral legal consequence precluding dismissal of such an appeal as moot, we have jurisdiction. *See* art. V, § 3(b)(3), Fla. Const. For the reasons that follow, we resolve the narrow conflict issue by holding that a defendant's potential designation as a prison releasee reoffender under section 775.082(9)(a)1. is not a sufficient collateral legal consequence to preclude dismissal of the appeal as moot. We therefore approve the Fourth District's decision in *Casiano* and disapprove the First District's decision in *Johnson*.

## BACKGROUND

Juan Casiano entered a partially negotiated no contest plea to several driving offenses. Since Casiano's scoresheet reflected 21.9 sentence points, the statutory maximum penalty was a nonstate prison sanction of up to one year under subsection (10). However, contrary to this Court's decision in *Brown v. State*, 260

---

1. While the 2018 and 2017 versions of subsection (10) were at issue in *Casiano* and *Johnson* respectively, the statutory language of subsection (10) has remained the same since 2009.

2. The statutory language of section 775.082(9)(a)1. was amended in 2019, but this does not impact our analysis. *See* ch. 2019-167, § 30, at 2131, Laws of Fla.

So. 3d 147, 150 (Fla. 2018), the trial court sentenced Casiano to one year and one day in state prison, followed by forty-seven months of probation, based on the court's independent factual finding that Casiano could present a danger to the public if subject only to a nonstate prison sanction. On appeal, Casiano challenged the incarcerative portion of his sentence, arguing that the trial court erred in making the dangerousness finding. In *Gaymon v. State*, 288 So. 3d 1087, 1093 (Fla. 2020), we held that "the proper remedy for harmful error resulting from the court, not the jury, finding the fact of dangerousness under [subsection (10)] is to remand for resentencing with instructions to empanel a jury to make such a determination, if the State seeks that finding in the defendant's case." Although the Fourth District concluded that the trial court erred when it made the dangerousness finding, it did not address whether the error was harmful. Rather, the district court dismissed Casiano's appeal as moot because he had completed his prison sentence, rejecting Casiano's argument that his potential future designation as a prison releasee reoffender under section 775.082(9)(a)1. was a sufficient collateral legal consequence precluding dismissal of his appeal as moot.[3]

_____

3. Casiano now argues that (1) his potential liability for costs of incarceration and correctional costs for the length of his prison sentence and (2) his present service of a term of probation rendering him subject to the sentence imposed upon him are additional collateral legal consequences of the trial court's error in sentencing him to state prison. Because he did not raise these arguments below, we decline to address them. *See Reynolds v. State*, 842 So. 2d 46, 52 n.5 (Fla. 2002) (declining to address two additional arguments made by the petitioner

- 3 -

## ANALYSIS

Section 775.082(9)(a)1. defines "prison releasee reoffender" as "any defendant who commits, or attempts to commit" any qualifying offense—as enumerated in the statute—within three years after a certain event, described in the statute as follows:

> being released from a state correctional facility operated by the Department of Corrections or a private vendor, a county detention facility following incarceration for an offense for which the sentence pronounced was a prison sentence, or a correctional institution of another state, the District of Columbia, the United States, any possession or territory of the United States, or any foreign jurisdiction, following incarceration for an offense for which the sentence is punishable by more than 1 year in this state.

Under the plain language of the statute, a defendant's status as a prison releasee reoffender (PRR) only attaches upon the commission or attempted commission of one of the offenses enumerated in the statute within three years after the defendant's release "from a [specified facility] following incarceration for an offense for which the sentence is punishable by more than 1 year in this state." § 775.082(9)(a)1. As the Third District Court of Appeal has explained, future sentence enhancement under section 775.082(9)(a)1. is contingent "first on the

_____

because they were "beyond the scope of the conflict in this case and they were not reached by the decision below"); *cf. Smith v. State*, 151 So. 3d 1177, 1184 (Fla. 2014) (concluding that to the extent the appellant presented new arguments that were never presented to the postconviction court below, those arguments were unpreserved for review).

- 4 -

defendant's voluntary decision to commit another crime; second, on whether the new crime is one capable of having enhanced sentencing; and third, on the prosecutor's discretionary decision whether to seek enhancement." *Major v. State*, 790 So. 2d 550, 552 (Fla. 3d DCA 2001). Because Casiano argues that his potential PRR status is a sufficient collateral legal consequence of his state prison sentence which precludes dismissal of his appeal as moot, we briefly explain the governing constitutional text and background to the mootness doctrine.

Article V, section 1 of the Florida Constitution vests "[t]he judicial power" in Florida's courts, and Florida's courts, including its appellate courts, reserve the exercise of judicial power for cases involving actual controversies. *Sarasota-Fruitville Drainage Dist. v. Certain Lands Within Said Dist.*, 80 So. 2d 335, 336 (Fla. 1955); *see Dep't of Revenue v. Kuhnlein*, 646 So. 2d 717, 720-21 (Fla. 1994) (explaining that the only exception to the general requirement that cases must involve a real controversy is where the Florida Constitution otherwise authorizes advisory opinions). This limitation on the exercise of judicial power to justiciable controversies is rooted in judicial adherence to the doctrine of separation of powers. *See Ervin v. City of N. Mia. Beach*, 66 So. 2d 235, 236 (Fla. 1953) ("Judicial adherence to the doctrine of separation of powers preserves the courts for the decision of issues between litigants capable of effective determination."

(emphasis omitted) (quoting 1 Walter H. Anderson, *Actions* for *Declaratory Judgments* 66 (2d ed. 1951))); *see also* art. II, § 3, Fla. Const.

The mootness doctrine is "a corollary to the limitation on the exercise of judicial power to the decision of justiciable controversies." *Merkle v. Guardianship of Jacoby*, 912 So. 2d 595, 600 (Fla. 2d DCA 2005). In general, an appellate court will dismiss a case if the issues raised have become moot. *Godwin v. State*, 593 So. 2d 211, 212 (Fla. 1992). We have defined an issue as "moot" "when the controversy has been so fully resolved that a judicial determination can have no actual effect." *Id.* However, we have recognized an exception to this general rule for situations in which "collateral legal consequences that affect the rights of a party flow from the issue to be determined." *Id.*[4] In contrast to a challenge to an underlying conviction, a sentence generally cannot be challenged after it has been fully served and has expired because "any sentencing issue is moot thereafter." *Raines v. State*, 14 So. 3d 244, 246 (Fla. 2d DCA 2009).

As previously explained in footnote 3, *supra*, we write only to address Casiano's argument that the general rule of mootness should not be applied to his

---

4. We note that we have explained this exception in the context of the mootness of the specific issue to be determined, *see Godwin*, 593 So. 2d at 212, but we recognize that the existence of sufficient collateral legal consequences necessarily means that the case itself is not moot because such consequences flow from the issue.

fully served sentence due to the possibility of a future sentencing enhancement as a PRR. With respect to that issue, we agree with the Fourth District that Casiano's potential PRR status is too speculative to be considered a collateral legal consequence of his unlawful sentence. While Casiano's release from the Department of Corrections following incarceration could potentially make him subject to PRR designation, he would still need to commit or attempt to commit one of the offenses enumerated in the statute within three years of his release for that alleged collateral consequence of his unlawful sentence to begin to materialize. As the record does not reflect that Casiano has committed or attempted to commit an offense enumerated in the statute or that he currently faces sentencing as a PRR, a judicial determination "can have no actual effect." *Godwin*, 593 So. 2d at 212.

However, Casiano argues that our characterization of potential sentencing enhancements for future criminal offenses as "collateral consequences" of a plea or conviction in *State v. Dickey*, 928 So. 2d 1193, 1195 (Fla. 2006), should drive our resolution of the conflict issue. *Dickey* is inapposite. We did not define potential sentencing enhancements as "collateral consequences" in the context of mootness; rather, we addressed a certified question of great public importance, namely "whether allegations of affirmative misadvice by trial counsel on the sentence-enhancing consequences of a defendant's plea for future criminal behavior in an

otherwise facially sufficient motion are cognizable as an ineffective assistance of counsel claim." *Id.* at 1194. We answered the certified question in the negative, holding that "a claim that counsel affirmatively misadvised a defendant about the collateral effect of future sentence-enhancing potential does not meet *Strickland's*[5] requirements for a valid claim of ineffective assistance of counsel." *Dickey*, 928 So. 2d at 1198. Moreover, while we did refer to potential sentencing enhancements for future criminal offenses "as collateral consequences" of entering a plea, the defendant in *Dickey* specifically alleged in his postconviction motion "that his Alabama sentence was enhanced based on his prior Florida conviction." *Id.* at 1195. Accordingly, Casiano's situation is both legally and factually distinguishable from that of the defendant in *Dickey*.

Although Casiano acknowledges that the United States Supreme Court's decisions interpreting article III, section 2 of the United States Constitution, which extends to the federal courts the "judicial Power . . . to all Cases . . . [and] Controversies" enumerated therein, are not binding upon this Court, he nonetheless relies on the following language in *Evitts v. Lucey*, 469 U.S. 387, 391 n.4 (1985), to argue that the potential use of Casiano's release from prison for enhancement

---

5. *Strickland v. Washington*, 466 U.S. 668 (1984).

under a recidivism statute is a sufficient collateral consequence to overcome

mootness:

> The [State] informed this Court five days prior to oral argument that respondent had been finally released from custody and his civil rights, including suffrage and the right to hold public office, restored as of May 10, 1983. However, respondent has not been pardoned and some collateral consequences of his conviction remain, including the possibility that the conviction would be used to impeach testimony he might give in a future proceeding and the possibility that it would be used to subject him to persistent felony offender prosecution if he should go to trial on any other felony charges in the future. This case is thus not moot.

However, Casiano overlooks the importance of the nature of the challenge

brought in *Evitts*. In *Evitts*, the defendant filed a habeas petition *challenging his*

*conviction* of trafficking in controlled substances, which was granted. *Id.* at 389-

90. He was released from custody, and his civil rights were restored during the

pendency of the underlying petition for certiorari. *Id.* at 391 n.4. In addressing the

petition for certiorari, the Supreme Court noted that the defendant had "for the past

seven years unsuccessfully pursued every avenue open to him in an effort to obtain

a decision on the merits of his appeal and to prove that his conviction was

unlawful." *Id.* at 391.

The Supreme Court's holding that the defendant's release from custody

during the pendency of the underlying petition for certiorari did not render the case

moot is entirely consistent with the general rule in Florida that an appeal of an

*underlying conviction* is not rendered moot by the completion of a defendant's

sentence. *See, e.g.*, *Parks v. State*, 96 So. 3d 474, 475 n.2 (Fla. 1st DCA 2012) (drawing a distinction between "appeals challenging the illegality of a sentence and the illegality of the underlying conviction" because "[e]ven if a defendant's sentence has expired, when 'the issues to be raised on appeal challenge the legality of the conviction, rather than the sentence[,] [t]he possibility of removing the stigma of a conviction represents a significant practical purpose demonstrating the continuing viability of the appeal' ") (quoting *Lamb v. State*, 526 So. 2d 998, 998 (Fla. 1st DCA 1988)). Moreover, we note that the Supreme Court has since rejected the argument that a defendant's parole revocation "could be used to increase his sentence in a future sentencing proceeding" as too speculative a collateral legal consequence "because it was contingent upon [the defendant's] violating the law, getting caught, and being convicted." *Spencer v. Kemna*, 523 U.S. 1, 15 (1998). The Supreme Court reasoned, "[Defendants] themselves are able—and indeed required by law—to prevent such a possibility from occurring." *Id.* (quoting *Lane v. Williams*, 455 U.S. 624, 632 n.13 (1982)).

We recognize Casiano's argument that unlike the parole revocation at issue in *Spencer*, his release from a state prison facility could have statutory consequences for a future sentence under section 775.082(9)(a)1. by removing a future sentencing judge's discretion and requiring the imposition of a mandatory sentence. While a conviction may indeed have consequences for a future sentence,

- 10 -

*see e.g.*, *Roberts v. State*, 644 So. 2d 81, 82-83 (Fla. 1994) (addressing a case where the defendant's prior convictions affected scoresheet calculation), Casiano is not challenging his conviction, and he has not, in any event, identified a case where we have used that potential consequence as a basis to preclude dismissal of an appeal as moot. Accordingly, we hold that a defendant's potential PRR designation under section 775.082(9)(a)1. is not a sufficient collateral legal consequence flowing from a state prison sentence erroneously imposed pursuant to a trial court's dangerousness finding under subsection (10) to preclude dismissal of an appeal as moot where the defendant has served the incarcerative portion of the sentence. *See Kuhnlein*, 646 So. 2d at 720-21; *Godwin*, 593 So. 2d at 212; *Raines*, 14 So. 3d at 246.

## CONCLUSION

For the foregoing reasons, we approve the Fourth District's decision in *Casiano* and disapprove the First District's decision in *Johnson*.

It is so ordered.

CANADY, C.J., and POLSTON, MUÑIZ, COURIEL, and GROSSHANS, JJ., concur.
LABARGA, J., concurs in result only with an opinion.

NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING MOTION AND, IF FILED, DETERMINED.

LABARGA, J., concurring in result only.

While I agree that the completion of Casiano's sentence renders his sentencing challenge moot—and thus, I concur in the result—there is no question that the trial court erred in classifying Casiano as dangerous. This classification could bear significant consequences in the future, should Casiano face sentencing as a prison releasee reoffender (PRR) under section 775.082(9)(a)1., Florida Statutes. In such an event, Casiano should not be prevented from challenging his erroneous dangerousness classification.

In the decision below, the Fourth District stated: "But we do not assume Casiano's punishment failed to dissuade him from engaging in future qualifying offenses. Nor do we preclude him from challenging the application of the prison releasee reoffender statute in any future case in which the State seeks to apply it. Instead, we determine that we can offer no relief here. His sentence was served, and his appeal is moot." *Casiano v. State*, 280 So. 3d 105, 107 (Fla. 4th DCA 2019).

I agree with the district court. Should Casiano be faced with PRR sentencing in the future, the current determination of mootness does not procedurally bar him from challenging his erroneous sentence at that time.

Application for Review of the Decision of the District Court of Appeal – Direct Conflict of Decisions

Fourth District - Case Nos. 4D18-3255 and 4D18-3257

(Indian River County)

Carey Haughwout, Public Defender, and Benjamin Eisenberg, Assistant Public Defender, Fifteenth Judicial Circuit, West Palm Beach, Florida,

    for Petitioner

Ashley Moody, Attorney General, Tallahassee, Florida, Celia Terenzio, Senior Assistant Attorney General, and Rachael Kaiman, Assistant Attorney General, West Palm Beach, Florida,

    for Respondent